UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------x
                             :
PARIMAL                      :    Civ. No. 3:19CV01910(MPS)
                             :
v.                           :
                             :
MANITEX INTERNATIONAL, INC.  :    February 3, 2021
                             :
-----------------------------x
```

**RULING ON DISCOVERY CROSS MOTIONS [Docs. #63, #64]**

On October 8, 2020, Judge Michael P. Shea referred a discovery dispute in this matter to the undersigned. [Doc. #42]. In response to the referral, the undersigned entered an Order requiring that on or before October 15, 2020, the parties file a joint notice setting forth the nature of the dispute and a brief summary of each party's position. See Doc. #43. The parties filed the joint notice on October 15, 2020. [Doc. #44].

On October 30, 2020, the undersigned held a telephonic discovery conference. See Docs. #65, #66. During that conference, plaintiff Parimal (hereinafter "Parimal" or "plaintiff") moved to compel the production of certain purportedly privileged information described in the parties' joint notice. [Doc. #63]. Counsel for defendant Manitex International, Inc. (hereinafter "Manitex" or "defendant") moved for a protective order from producing such information. [Doc. #64]. During the October 30, 2020, telephonic status conference,

1

the undersigned ordered the parties to file additional briefing in support of their arguments raised in the joint notice. See Doc. #65 at 7. The parties each filed opening briefs on November 20, 2020, see Docs. #73, #74, and responsive briefs on December 4, 2020, see Docs. #75, #76.

For the reasons stated below, plaintiff's Motion to Compel [**Doc. #63**] is **TAKEN UNDER ADVISEMENT, in part, and DENIED, in part**, and defendant's Motion for Protective Order [**Doc. #64**] is **TAKEN UNDER ADVISEMENT, in part, and GRANTED, in part**.

## I.   Background

Plaintiff brings this action against his former employer Manitex, alleging that Manitex failed to fulfill certain contractual commitments related to the terms of plaintiff's employment. See generally Doc. #23. Plaintiff proceeds pursuant to an Amended Complaint, and asserts the following claims: (1) breach of contract; (2) promissory estoppel; (3) breach of the implied covenant of good faith and fair dealing; (4) fraudulent misrepresentation; (5) negligent misrepresentation; (6) wrongful termination; and (7) violation of the Connecticut Unfair Trade Practices Act. See generally id.

Defendant has filed a motion to dismiss counts two, three, six, and seven of the Amended Complaint, which is pending before Judge Shea. See Doc. #25. Judge Shea has stayed discovery as to count six of the Amended Complaint (wrongful termination),

2

pending the adjudication of the motion to dismiss. See Doc. #17 at 1. All remaining fact discovery is scheduled to close on March 1, 2021. See Doc. #69.

The instant dispute centers primarily on defendant's invocation of the attorney-client privilege as to certain communications between defendant's then-CEO and Chairman David Langevin and Marvin Rosenberg, whom defendant describes as its "legal and business consultant and member of the Board of Directors of Manitex." Doc. #74 at 5-6.[1] Plaintiff asserts that the documents withheld by defendant on the ground of the attorney-client privilege should be produced because at the time of the communications, Mr. Rosenberg was a retired New York attorney and not authorized to practice law. See Doc. #73 at 6-10. Defendant responds that communications with a retired attorney are entitled to the protection of the attorney-client privilege, and even if Mr. Rosenberg's retired status destroys the privilege, Mr. Langevin had a reasonable belief that he was communicating with a licensed attorney, and therefore his communications with Mr. Rosenberg remain privileged. See generally Doc. #74 at 7-15.

If the privilege is not destroyed by Mr. Rosenberg's retired status, plaintiff contends: (1) Mr. Rosenberg's business

---

[1] The Court cites to the page numbers reflected in the document's ECF header.

communications are not protected by the privilege; and (2) defendant's privilege logs are inadequate. <u>See</u> Doc. #73 at 10-16. Plaintiff also asserts that defendant waived the attorney-client privilege by voluntarily disclosing to plaintiff certain communications between Mr. Langevin and an attorney with the law firm of Bryan Cave. <u>See</u> Doc. #73 at 10-16.

Defendant contends that: (1) legal advice is protected when an attorney acts in a dual business-legal role; (2) its privilege logs comply with the requirements of the Local Rules; and (3) it did not commit a subject matter waiver of the privilege. <u>See generally</u> Doc. #74 at 15-20.

The parties filed responsive cross briefs on December 4, 2020, generally attacking the opposing parties' arguments. <u>See generally</u> Docs. #75, #76. The Court considers the parties' arguments in turn.

## II.  **General Legal Standard**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

4

Fed. R. Civ. P. 26(b)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." <u>Cole v. Towers Perrin Forster & Crosby</u>, 256 F.R.D. 79, 80 (D. Conn. 2009).

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." <u>Seattle Times Co. v. Rhinehart</u>, 467 U.S. 20, 36 (1984).

## III. <u>Choice of Law</u>

Plaintiff brings seven Connecticut state law claims against defendant, and asserts jurisdiction on grounds of diversity. <u>See generally</u> Doc. #23. "Where, as here, a federal court's subject-matter jurisdiction is premised on diversity of citizenship, the court must apply state law to privilege issues." <u>Safeco Ins. Co. of Am. v. Vecsey</u>, 259 F.R.D. 23, 27–28 (D. Conn. 2009) (footnote, citation, and quotation marks omitted); <u>see also</u> Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege

regarding a claim or defense for which state law supplies the
rule of decision.").

Although the parties agree that state law applies to the
question of privilege, they disagree as to whether Connecticut
or Illinois law applies to the instant dispute. The parties do
agree, however, that in resolving that question the Court must
apply Connecticut choice of law principles. See Doc. #73 at 5-6;
Doc. #74 at 7. Indeed, "[i]t is well established that a federal
court sitting in diversity must generally apply the choice of
law rules of the state in which it sits." In re Coudert Bros.
LLP, 673 F.3d 180, 186 (2d Cir. 2012); see also Cap Gemini Ernst
& Young, U.S., L.L.C. v. Nackel, 346 F.3d 360, 365 (2d Cir.
2003) ("As a federal court sitting in diversity jurisdiction,
the District Court is obligated to apply the law of the forum
state in analyzing preliminary choice-of-law questions."
(citation and quotation marks omitted)).

Applying Connecticut's choice of law rules, plaintiff
asserts that the Court should apply Connecticut law to the
question of privilege because Connecticut has the most
significant relationship to the parties and contract at issue.
See Doc. #73 at 5-6; Doc. #75 at 2. Conversely, defendant
contends that the Court should apply the law of Illinois because
it

6

> has the most significant relationship to the privilege
> issues raised by the parties because Manitex, the client
> holding the privilege, is headquartered and has its
> principal place of business in Illinois, and David
> Langevin, the then CEO and Chairman of the Board, whose
> communications with Marvin Rosenberg are at issue, was
> headquartered in Bridgeport, Illinois.

Doc. #74 at 7; see also Doc. #76 at 5-7.[2] Accordingly, the Court

first resolves the question of which law to apply to defendant's

invocation of the attorney-client privilege.

Connecticut's choice of law "rule requires the court to

select the local law of the state having the most significant

relationship to the occurrence and the parties to the dispute."

MM Glob. Servs., Inc. v. Dow Chem. Co., 283 F. Supp. 2d 689, 699

(D. Conn. 2003), adhered to on reconsideration, No.

3:02CV01107(AVC), 2004 WL 556577 (Mar. 18, 2004). However,

> [t]he threshold choice of law question in Connecticut,
> as it is elsewhere, is whether there is an outcome
> determinative conflict between the applicable laws of
> the states with a potential interest in the case. If
> not, there is no need to perform a choice of law
> analysis, and the law common to the jurisdictions should
> be applied.

Lumbermens Mut. Cas. Co. v. Dillon Co., 9 F. App'x 81, 83 (2d

Cir. 2001); see also DeLollis v. Friedberg, Smith & Co., P.C.,

933 F. Supp. 2d 354, 358 (D. Conn. 2013) (same), aff'd, 600 F.

App'x 792 (2d Cir. 2015). Thus, the Court first considers

---

[2] Defendant states in later briefing that its principal place of
business is in Bridgeview, Illinois. See Doc. #76 at 6-7. This
discrepancy does not affect the Court's choice of law analysis.

whether there is an outcome determinative conflict between the laws of Connecticut and Illinois as to the applicability of the attorney-client privilege.

A.   Attorney-Client Privilege in Connecticut and Illinois

The issue presented to the Court is the applicability of the attorney-client privilege to certain communications made by a retired attorney to the defendant corporation. Intertwined with that issue is the additional question of whether the attorney was providing business or legal advice, or both. Plaintiff also raises a separate waiver issue. The Court begins with a review of the attorney-client privilege as generally applicable to corporate clients in Connecticut and Illinois.

1. The Attorney-Client Privilege Under Connecticut Law

"Connecticut has a long-standing, strong public policy of protecting attorney-client communications." Metro. Life Ins. Co. v. Aetna Cas. & Surety Co., 730 A.2d 51, 58 (Conn. 1999). "The privilege fosters full and frank communications between attorneys and their clients and thereby promotes the broader public interests in the observation of law and the administration of justice." Harrington v. Freedom of Info. Comm'n, 144 A.3d 405, 413 (Conn. 2016) (citation and quotation marks omitted).

Under Connecticut law, there are

> four criteria that must be present, in the corporate
> context, in order for the privilege to attach: "(1) the
> attorney must be acting in a professional capacity for
> the corporation, (2) the communication must be made to
> the attorney by current employees or officials of the
> corporation, (3) the communication must relate to the
> legal advice sought by the corporation from the
> attorney, and (4) the communication must be made in
> confidence." [Shew v. Freedom of Info. Comm'n, 714 A.2d
> 664, 670-71 (Conn. 2003)]. The burden of proving each
> element of the privilege, by a fair preponderance of the
> evidence, rests with the [party] ... seeking to assert
> it. State v. Hanna, [191 A.2d 124, 130 (Conn. 1963)].

Blumenthal v. Kimber Mfg., Inc., 826 A.2d 1088, 1096 (Conn.

2003) (footnote omitted) (brackets altered).

Nevertheless, the Connecticut Supreme Court "has long

recognized the principle that 'not every communication between

attorney and client falls within the attorney-client

privilege.'" Harrington, 144 A.3d at 414 (quoting Ullmann v.

State, 647 A.2d 324, 332 (Conn. 1994)). With respect to the

applicability of the privilege to communications containing a

combination of business and legal advice, the Connecticut

Supreme Court has held "that the primary purpose standard

governs such inquiries." Harrington, 144 A.3d at 417-18. Thus,

> if the non-legal aspects of the consultation are
> integral to the legal assistance given and the legal
> assistance is the primary purpose of the consultation,
> both the client's communications and the lawyer's advice
> and assistance that reveals the substance of those
> communications will be afforded the protection of the
> privilege.

Id. at 416 (footnote, citation, and quotation marks omitted).

Although there is a dearth of Connecticut law on the issue, some Connecticut courts have upheld the invocation of the attorney-client privilege where the proponent of the privilege had a "reasonable belief" that an attorney-client relationship existed. State v. Kosuda-Bigazzi, No. HHB-CR-18-0068925-T, 2019 WL 4513807, at *18 (Conn. Super. Ct. Aug. 16, 2019), aff'd, No. 20341, 2020 WL 1808821 (Conn. Apr. 8, 2020); Somma v. Fabian, No. CV-99-0174508-S, 2005 WL 1524937, at *3 n.5 (Conn. Super. Ct. June 3, 2005) (Although "no actual attorney client relationship existed[,]" plaintiff's "sincere and reasonable belief" that an attorney became "his lawyer" "would be sufficient to provide him the protection of the attorney-client privilege."); see also Goetz v. Hershman, No. 06CV08180(RPP), 2010 WL 2813497, at *15 n.28 (S.D.N.Y. July 15, 2010) ("While the Court has located no Connecticut Supreme Court cases on point, a few lower Connecticut courts have employed the 'reasonable belief' formulation when determining whether an attorney-client relationship exists."), aff'd in part, vacated in part on other grounds, remanded, 423 F. App'x 3 (2d Cir. 2011).[3]

---

[3] With respect to the waiver issue, and as discussed further below, Connecticut courts appear to follow the same approach as Illinois. See n.11, infra.

>    *2. The Attorney-Client Privilege Under Illinois Law*

In Illinois, like Connecticut, "[t]he attorney-client privilege is intended to promote full and frank consultation between clients and legal advisors by removing the fear that disclosure of information will be compelled." Janousek v. Slotky, 980 N.E.2d 641, 650 (Ill. App. Ct. 2012). Illinois has "a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." Waste Mgmt., Inc. v. Int'l Surplus Lines Ins. Co., 579 N.E.2d 322, 327 (Ill. 1991).

With respect to a corporation's assertion of the attorney-client privilege, Illinois law is similar, but not identical, to Connecticut law. Generally, to be entitled to the protection of the attorney-client privilege under Illinois law, "a party must show that the statement originated in a confidence that it would not be disclosed, was made to an attorney acting in his legal capacity for the purpose of securing legal advice or services, and remained confidential." Equity Residential v. Kendall Risk Mgmt., Inc., 246 F.R.D. 557, 563 (N.D. Ill. 2007) (applying Illinois law) (citation and quotation marks omitted). However, when a corporation seeks to assert the privilege,

>    Illinois applies a control group analysis and narrowly
>    interprets the scope of the privilege in its application
>    to employees of such a corporation. Consolidation Coal
>    Co. v. Bucyrus-Erie Co., 432 N.E.2d 250, 257-58 (Ill.
>    1982). Under this analysis, only those communications

11

> made by employees in top management positions who have the ability to make a final decision are privileged. <u>Rounds v. Jackson Park Hosp. & Med. Ctr.</u>, 745 N.E.2d 561, 568 (Ill. App. 3d 2001); <u>Consolidation</u>, 432 N.E.2d at 258.

<u>Id.</u>[4] In this regard, "Connecticut law provides greater protection to these communications than Illinois law." <u>Id.</u> at 565.[5]

"The attorney-client privilege only protects those communications which relate to the giving or seeking of legal advice. Simply funneling communications past an attorney will not make them privileged." <u>Id.</u> at 563 (citations omitted). Under Illinois law: "The attorney-client privilege of confidentiality does not apply to documents discussing business advice instead of legal advice." <u>CNR Invs., Inc. v. Jefferson Tr. & Sav. Bank of Peoria</u>, 451 N.E.2d 580, 583 (Ill. App. Ct. 1983). Nevertheless, "[w]here legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communications relating to that purpose, made in confidence by the client, are protected from disclosure by the client or lawyer, unless the

---

[4] Other employees' communications will be protected by the privilege where certain conditions are met. <u>See</u> <u>Equity Residential</u>, 246 F.R.D. at 563. The Court does not further address that test because the communications at issue here were each made by or to defendant's then-CEO and Chairman, David Langevin. <u>See</u> Doc. #74 at 4.

[5] As is true in Connecticut, pursuant to Illinois law, "it is the party <u>claiming</u> the privilege that carries the burden of presenting facts that give rise to the privilege." <u>Janousek</u>, 980 N.E.2d at 650 (emphasis in original).

protection is waived." Ctr. Partners, Ltd. v. Growth Head GP, LLC, 981 N.E.2d 345, 355 (Ill. 2012).

Although Illinois law is also scant on the issue, Illinois recognizes that under some circumstances there may be an "implied" attorney-client relationship:

> Under Illinois law, an implied attorney[-] client relationship, and the privilege flowing from it, may arise "when the lay party submits confidential information to the law party with the reasonable belief that the latter is acting as the former's attorney[.]" Westinghouse Electric Corp. v. Kerr-McGee Corp., 580 F.2d 1311, 1319-20 (7th Cir.), cert. denied, 439 U.S. 955 (1978). The reasonableness of the lay party's belief can be shown by evidence of "any relatively clear indication by the potential client to the attorney that he believed he was being ... represented," or "some finding that the potential client's subjective belief is minimally reasonable." United States v. Evans, 113 F.3d 1457, 1465 (7th Cir. 1997).

Dexia Credit Local v. Rogan, 231 F.R.D. 287, 291 (N.D. Ill. 2005); see also In re Raymond Prof'l Grp., Inc., 400 B.R. 624, 636 (Bankr. N.D. Ill. 2009) (applying the same test in the context of a legal malpractice action); Maxwell v. McDonald Invs., Inc., No. 05CV02053(JFH), 2005 WL 8177390, at *3 (N.D. Ill. Dec. 6, 2005) (same).

B.   Is There a True Conflict Between Connecticut and Illinois Law?

Having reviewed the applicable law, the Court first considers whether there is an outcome determinative conflict between Illinois and Connecticut on the issue of privilege.

13

With respect to the invocation of the attorney-client
privilege by a corporation, Connecticut generally provides
greater protection to corporate communications. See Equity
Residential, 246 F.R.D. at 565. Under the current circumstances,
however, any conflict between Illinois and Connecticut law is
illusory because each of the communications at issue was between
a member of defendant's control group, Mr. Langevin, and its
claimed attorney, Mr. Rosenberg. See Gen. Elec. Capital Corp. v.
DirecTv, Inc., 94 F. Supp. 2d 190, 196 (D. Conn. 1999) ("Where
application of the laws of two or more jurisdictions with
contacts to the litigation reach identical results, thus
eliminating any potential conflict of laws, there is a
'false conflict' and no choice of law analysis is necessary."
(citation and quotation marks omitted)).

Similarly, under the current circumstances, there is only a
"false conflict" as to the issue of an implied attorney-client
relationship. Under the laws of both Connecticut and Illinois,
an attorney-client relationship may be found where the lay
person reasonably believes that the purported attorney is acting
as his or her attorney. See Kosuda-Bigazzi, 2019 WL 4513807, at
*18; Dexia Credit, 231 F.R.D. at 291. Although Illinois includes
an additional requirement that the communication be sent in
confidence, that element is irrelevant here, where the privilege
log indicates that the communications at issue were between only

14

Mr. Langevin and Mr. Rosenberg. See Docs. #44-2, #74-3; see also
Doc. #74 at 12-13.

As to the issue of business versus legal advice, both
Connecticut and Illinois recognize that not every communication
between an attorney and client is subject to the privilege. See
Harrington, 144 A.3d at 414; Equity Residential, 246 F.R.D. at
563. However, by employing the "primary purpose" test,
Connecticut appears to afford greater protection to
communications that implicate both legal and business advice.
See Harrington, 144 A.3d at 416. By contrast, Illinois takes a
stricter approach: "An attorney's comments conveying legal
advice are protected by the attorney-client privilege but the
opposite is true as to comments not relaying legal advice."
Wells Fargo Bank Minn., NA v. Envirobusiness, Inc., 2014 IL App
(1st) 132714-U ¶ 34, 2015 WL 808266, at *7 (Feb. 25, 2015); see
also CNR Invs., 451 N.E.2d at 583 ("The attorney-client
privilege of confidentiality does not apply to documents
discussing business advice instead of legal advice."). 
Accordingly, there appears to be an outcome determinative
conflict on this narrow issue, and the Court will therefore
proceed with a choice of law analysis.

C.    Choice of Law Analysis

To reiterate, Connecticut has "adopted the 'most
significant relationship' approach of the Restatement (Second)

15

of Conflict of Laws, for analyzing choice of law issues
involving contracts." Am. States Ins. Co. v. Allstate Ins. Co.,
922 A.2d 1043, 1047 (Conn. 2007) (citation and quotation marks
omitted). This "rule requires the court to select the local law
of the state having the most significant relationship to the
occurrence and the parties to the dispute." MM Glob. Servs., 283
F. Supp. 2d at 699.

In his opening brief, plaintiff asserts that the Court
should apply Connecticut law to the privilege issues because
Connecticut has the most significant relationship with the
contract dispute between the parties. See Doc. #73 at 5-6.
Plaintiff contends:

> Manitex made representations to a citizen of Connecticut
> and offered an employment contract to a resident of
> Connecticut. The contract was signed in Connecticut, and
> work was commenced for Manitex while Parimal was still
> a resident of Connecticut. With regards to the privilege
> issues specifically, the bulk of the communications in
> question consisted of conversations between Parimal and
> both Langevin and Rosenberg while he was a Connecticut
> resident.
>
> ...
>
> Further, as Connecticut is the place of negotiation and
> the place where performance of the contract began, the
> law of Connecticut should be applied to resolve the
> attorney-client privilege issues.

Doc. #73 at 6. Defendant, however, takes a much different
approach -- focusing not on the state's relationship with the
contract, but instead, on the state's relationship with the

16

communications between Mr. Langevin and Mr. Rosenberg. See Doc.
#74 at 7; Doc. #76 at 5-7. In support of that position,
defendant represents:

> Here, the communications at issue took place between
> Langevin or other Manitex corporate employees, who were
> headquartered in Bridgeview, Illinois, on the one hand,
> and Mr. Rosenberg, who is a resident of South Carolina.
> Additionally, Manitex, who holds the privilege, has its
> principal place of business in Bridgeview, Illinois.
> Accordingly, Illinois has the most significant
> relationship to the determination of the attorney-client
> privilege issues before the Court.

Doc. #76 at 6-7. Plaintiff agrees with several of the facts
asserted by defendant, noting in a section of his opening brief
titled "Undisputed Material Facts" that: (1) Manitex is a
Michigan corporation with its principle place of business in
Illinois; (2) during the time at issue Mr. Langevin was the CEO
and Chairman of Manitex, and his office was located in Illinois;
and (3) Mr. Rosenberg resides in South Carolina. See Doc. #73 at
2-3.

Here, the Court is not tasked to decide the breach of
contract claim. The only issue the Court considers now is
whether defendant has appropriately invoked the attorney-client
privilege. Accordingly, the Court applies the law of the state
with the most significant relationship to the disputed
communications and the parties to those communications. See MM
Glob. Servs., 283 F. Supp. 2d at 699.

17

The privilege logs prepared by defendant reflect that each of the communications at issue occurred between Mr. Langevin and Mr. Rosenberg.[6] See generally Doc. #74-2; Doc. #74-3. Both Manitex's principal place of business, and Mr. Langevin's office, are located in Illinois. See Doc. #76 at 6-7; Doc. #73 at 2-3. Although the communications related to the employment of a Connecticut resident, there is nothing in the record to suggest that any of the communications occurred in, or were otherwise directed to, the State of Connecticut. Plaintiff's statement that the "bulk of the communications ... consisted of conversations between Parimal and both Langevin and Rosenberg while he was a Connecticut resident[,]" Doc. #73 at 6, makes little sense given that Parimal's inclusion on those communications would have destroyed the privilege. Finally, it would be wholly unreasonable for a corporation located in Illinois discussing legal matters with attorneys located in, and barred by, other states, to anticipate that those communications would be subject to Connecticut law.[7] Therefore, the Court finds that for purposes of the current issue before the Court —-

---

[6] Manitex, the client, holds the attorney-client privilege. See Ctr. Partners, 981 N.E.2d at 356.

[7] As previously noted, Mr. Rosenberg resides in South Carolina and is barred by the State of New York. Attorney Todd Kaye, whose communication is the subject of the waiver issue, is also located outside the State of Connecticut.

Manitex's invocation of the attorney-client privilege --
Illinois has the most significant relationship to that issue.
See, e.g., Expert Choice, Inc. v. Gartner, Inc., No.
3:03CV02234(CFD)(TPS), 2007 WL 951662, at *2 (D. Conn. Mar. 27,
2007) ("The Court finds that Connecticut has the most
significant relationship to the issues raised by the parties
because all privileged communications took place in Connecticut,
the parties' contractual and business relationship was centered
in Connecticut, and DDI's principal place of business is in
Connecticut."). Accordingly, the Court will apply Illinois law
to the instant dispute.[8]

## IV.  **Discussion**

The Court first considers the applicability of the
attorney-client privilege to the communications between Mr.
Langevin and Mr. Rosenberg. Plaintiff does not challenge the
confidentiality of the documents listed on the privilege log
exchanged between Mr. Langevin and Mr. Rosenberg. For the
purposes of the below discussion, the Court assumes, without
deciding, that the communications at issue "originated in a
confidence ... and remained confidential." Equity Residential,
246 F.R.D. at 563. Rather, plaintiff primarily challenges
whether Mr. Rosenberg was "acting in his legal capacity for the

---

[8] The Court makes no findings regarding the law to be applied to
the substantive claims raised in this litigation.

purpose of securing legal advice or services[.]" Id.
Accordingly, the Court first considers whether Mr. Rosenberg, a
retired attorney, was "an attorney acting in his legal
capacity[.]" Id.

> A.   Applicability of the Attorney-Client Privilege to
>      Retired Attorneys

Mr. Rosenberg is an attorney admitted to the New York Bar
and has taken "retired" status. See Doc. #76 at 7. Plaintiff
asserts that because of Mr. Rosenberg's status, he is not
authorized to practice law, and therefore, his communications
with Manitex are not protected by the attorney-client privilege.
See Doc. #73 at 6-10. Defendant responds that communications
with a retired attorney are entitled to the protection of the
attorney-client privilege, and even if Mr. Rosenberg's status as
a retired attorney destroys the privilege, Mr. Langevin had a
reasonable belief that he was communicating with a licensed
attorney, and therefore his communications with Mr. Rosenberg
remain privileged. See generally Doc. #74 at 7-15.

Defendant does not dispute that Mr. Rosenberg has taken
retired status with the New York Bar; Mr. Rosenberg testified to
that fact. See Doc. #74-6 at 5. Defendant represents that
although Mr. Rosenberg has taken retired status, he has
continued to complete his biennial registration requirements and
has not resigned from the New York Bar. See Doc. #74 at 9.

Attorneys admitted to the New York Bar are generally required to file a biennial registration statement, which must be accompanied by a $375 registration fee. See N.Y. Comp. Codes R. & Regs. tit. 22, §§118.1(a)-(c), (g). However,

> [n]o fee shall be required from an attorney who certifies that he or she has retired from the practice of law. For purposes of this section, the **practice of law** shall mean the giving of legal advice or counsel to, or providing legal representation for, a particular body or individual in a particular situation in either the public or private sector in the State of New York or elsewhere[.] ... An attorney is "retired" from the practice of law when, other than the performance of legal services without compensation, he or she does not practice law in any respect and does not intend ever to engage in acts that constitute the practice of law.

Id. at (g) (emphasis in original).

Plaintiff primarily relies on this portion of New York law to support his argument that the attorney-client privilege does not apply to the communications at issue. See Doc. #73 at 7-8. However, this provision does not prohibit a retired attorney from practicing law -- it prohibits that attorney from practicing law for compensation. The question of the propriety of Mr. Rosenberg's compensation is not before this Court. Additionally, plaintiff relies on non-controlling case law for the assertion that the privilege cannot attach to communications with an attorney who is not admitted to the Bar. See id. at 8-9; Doc. #75 at 3-4. Here, however, Mr. Rosenberg is admitted to the New York Bar. He testified: "I maintain a membership in the New

21

York Bar." Doc. #74-6 at 5. Indeed, as of November 19, 2020, Mr. Rosenberg's Attorney Detail Report listed his "Registration Status" as "Attorney - Currently Registered." Doc. #74-7. Accordingly, although Mr. Rosenberg may be "retired," he remains a member of the New York Bar. As such, to the extent Mr. Rosenberg was giving legal advice or receiving queries seeking legal advice, he could have been doing so as an attorney acting in his legal capacity. See Equity Residential, 246 F.R.D. at 563.

Nevertheless, even if Mr. Rosenberg's retired status could prevent the privilege from attaching to his communications with Mr. Langevin, defendant contends that it "had a reasonable belief that Rosenberg was an attorney." Doc. #74 at 1. The Court construes this argument as asserting that even if there was no actual attorney-client relationship, defendant and Mr. Rosenberg had at least an implied attorney-client relationship.

To establish an implied attorney-client relationship, the client must establish a "reasonable belief" that an individual was acting as his or her attorney. See Dexia Credit, 231 F.R.D. at 291. There are two alternative approaches to establish reasonableness. First, reasonableness may be established "by evidence of any relatively clear indication by the potential client to the attorney that he believed he was being represented." Id. (citation and quotation marks omitted). This

22

is essentially an objective test. Second, and alternatively, reasonableness may be established by "some finding that the potential client's subjective belief is minimally reasonable." Dexia Credit, 231 F.R.D. at 291 (citation and quotation marks omitted).

Here, defendant's belief that its communications with Mr. Rosenberg would be protected by the attorney-client privilege is reasonable under either test. First, there is no dispute that Mr. Rosenberg is an established attorney with a law degree, and that defendant relied on his advice. Additionally, the deposition testimony submitted presents a "relatively clear indication by" defendant to Mr. Rosenberg that defendant "believed [it] was being represented." Id. For example, Laura Yu, defendant's Chief Financial Officer, testified that at the time of the events in question, Mr. Rosenberg "review[ed] legal contracts for Manitex." Doc. #74-4 at 7; see also Doc. #74-5 at 23 (Langevin Testimony concerning the interpretation of a contract which "Marvin [Rosenberg] and Bryan Cave were better suited to -- to -- it was more legal stuff, which I just didn't feel adequate that I could participate in." (sic)); Doc. #73-4 at 5-6 (Rosenberg Testimony: "I provide legal advice to Manitex on whatever legal matters are before the company."). If a corporation sends documents to an individual seeking legal advice, and receives advice in return, that is a "relatively

23

clear indication" of defendant's belief that it was being represented. Dexia Credit, 231 F.R.D. at 291.

Second, the deposition testimony also supports a finding that defendant's principals had a reasonable subjective belief that Mr. Rosenberg was acting as defendant's attorney. The standard for reasonableness under the subjective aspect of the test is minimal. See Dexia Credit, 231 F.R.D. at 291. In addition to the deposition testimony cited above, Ms. Yu testified that "Marvin Rosenberg, our attorney, forwarded" a document to her, and at the time of the events in question, Mr. Rosenberg served as Manitex's "general counsel." Doc. #74-4 at 6-7. Mr. Langevin similarly testified that Mr. Rosenberg served as general counsel for Manitex. See Doc. #74-5 at 13-14. The above-cited deposition testimony, in addition to the fact that Mr. Rosenberg is an admitted member of the New York Bar, cumulatively establishes that Manitex's principals had a reasonable subjective belief that Mr. Rosenberg was acting as Manitex's attorney.

Thus, for the reasons stated, the Court finds that Mr. Rosenberg's status as a retired attorney did not destroy the attorney-client privilege as to his communications with Manitex's principals, under these circumstances.

B.  Legal Advice versus Business Advice

Plaintiff next contends that defendant improperly invoked the privilege as to documents that reflect business, rather than legal advice. See Doc. #73 at 10-12; Doc. #75 at 6. Plaintiff relies on deposition testimony that Mr. Rosenberg acted, or continues to act, in both a legal and business-related capacity. See Doc. #73 at 11-12. Plaintiff asserts: "In providing its discovery compliance and privilege logs, Defendant has made no attempt to distinguish these sometimes competing roles of Rosenberg. The privilege log similarly fails to provide any identification of which role Rosenberg was acting in with respect to the purportedly privilege documents." Id. at 11 (sic).

Defendant contends that its privilege logs "make clear that the listed communications were made in confidence for the purpose of obtaining or providing legal advice." Doc. #74 at 12. Defendant represents that given Mr. Rosenberg's dual role, defense counsel reviewed documents with Mr. Rosenberg "to determine the nature of the advice sought and received before designating such a document as privileged[.]" Id. at 15. In support of its assertion of the privilege, defendant relies largely on its privilege logs, asserting that the logs "make clear that [the withheld communications] were for the purpose of

seeking or providing legal advice." Doc. #76 at 10. Defendant

represents that the logs

> contain 32 and 26 documents, respectively, as compared
> to the more than 1200 pages of documents that Manitex
> and Rosenberg produced in this matter. Manitex did not
> simply claim privilege for all communications with Mr.
> Rosenberg[.] ... Additionally, 13 of the 32 documents
> listed on the Manitex Privilege Log were redacted and
> produced to Plaintiff as part of Manitex's document
> production, and redactions were only applied to the
> privileged portions of the communications.

Doc. #76 at 11 (footnote omitted).

Local Rule 26(e) requires that privilege logs contain the

following information:

> (1) The type of document or electronically stored
> information; (2) The general subject matter of the
> document or electronically stored information; (3) The
> date of the document or electronically stored
> information; (4) The author of the document or
> electronically stored information; and (5) Each
> recipient of the document or electronically stored
> information.

D. Conn. L. Civ. R. 26(e).[9] "The purpose of preparing the

privilege log is to enable the Court and the parties to make an

intelligent decision as to whether a privilege exists, and to

reduce the need for in camera examination of the documents[.]"

Davis v. Hunt Leibert Jacobson P.C., No. 3:12CV01102(JBA), 2016

---

[9] Federal law governs the procedural aspects, such as the
adequacy of privilege logs, of this, and other, diversity cases.
See Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427
(1996) ("[F]ederal courts sitting in diversity apply state
substantive law and federal procedural law."); accord In re
Fosamax Prod. Liab. Litig., 707 F.3d 189, 193 (2d Cir. 2013).

WL 3349629, at *3 (D. Conn. June 10, 2016) (citation and quotation marks omitted). Thus, "privilege logs must include sufficient substantive detail for a meaningful review of the application of the privilege, including whether the communications were confidential and made between an attorney and client for the purpose of providing legal advice." Coan v. Dunne, No. 3:15CV00050(JAM)(RMS), 2019 WL 1097491, at *3 (D. Conn. Mar. 9, 2019) (citation and quotation marks omitted).

> A privilege log is "adequately detailed if, as to each document, it sets forth specific facts that, if credited, would suffice to establish each element of the privilege or immunity." Safeco Ins. Co. of Am. v. M.E.S., Inc., 289 F.R.D. 41, 47 (E.D.N.Y. 2011) (quotation marks omitted). Thus, logs are routinely found to be deficient when the details provided do not allow for a purposeful review of the claimed privilege.

Wanzer v. Town of Plainville, No. 3:15CV00016(AWT), 2016 WL 1258456, at *3 (D. Conn. Mar. 30, 2016) (string citation omitted).

Although "submitting a privilege log is critical, ... it is not sufficient[]" to establish the requirements of the attorney-client privilege. Hybrid Athletics, LLC v. Hylete, LLC, No. 3:17CV01767(VAB), 2019 WL 4127377, at *9 (D. Conn. Aug. 30, 2019). Here, defendant's privilege logs generally satisfy the requirements of Local Rule 26(e). Nevertheless, the descriptions in the log are not sufficient for the Court to determine whether or not the privilege protects those documents from disclosure.

Indeed, the deposition testimony submitted by the parties gives the Court some pause about the designation of these materials as privileged. First, Mr. Rosenberg's testimony about his understanding of the privilege raises some concerns. For example, he testified:

> Q: Well, sir, you understand as a lawyer that simply because something may involve a legal matter, it does not necessarily mean it's privileged? You agree with me generally as to that concept, correct?
>
> A: Generally, I don't know. What I do know is that I provide legal advice to Manitex on whatever legal matters are before the company.
>
> ...
>
> I think legal and factual matters are also often intertwined and can't be separated.

Doc. #73-4 at 5-6. Mr. Rosenberg further testified that his discussions with Mr. Langevin include "matters which involve legal and business matters, which is usually intertwined[,]" and that it is "very difficult to separate them because when you are discussing, for example, a potential acquisition, there are business matters and legal matters which are intertwined in that transaction." Id. at 8-9. Significantly, Mr. Rosenberg testified that he considers any conversation with Mr. Langevin to be privileged. See id. at 10.

Although Mr. Rosenberg testified that he did not review the privilege logs in this case, see Doc. #73-4 at 16, defense counsel represents that she conducted a privilege review of the

28

withheld documents with Mr. Rosenberg. <u>See</u> Doc. #74 at 18; Doc. #74-1 at 3-4. Defense counsel states: "While Mr. Rosenberg testified at this deposition that he did not recall whether he was involved in the selection of documents claimed to be privileged in this case, this does not change the meticulous process that was actually undertaken by counsel to determine whether a document should be designated as privileged." Doc. #74 at 18-19 (citation of affidavit omitted). This inconsistency also causes some concern.

Illinois "adhere[s] to a strong policy of encouraging disclosure, with an eye toward ascertaining that truth which is essential to the proper disposition of a lawsuit." <u>Waste Mgmt.</u>, 579 N.E.2d at 327; <u>see also</u> <u>Ctr. Partners</u>, 981 N.E.2d at 356 ("The privilege is to be strictly confined within its narrowest limits[.]"). Accordingly, in an abundance of caution, and given Mr. Rosenberg's views on the attorney-client privilege and the conflicting evidence concerning the review of the documents, the Court will conduct an <u>in</u> <u>camera</u> review of the challenged documents.

Counsel for defendant shall provide the Court with hard copies of the withheld documents listed on the privilege logs that were sent or received by Mr. Rosenberg. Each document must be Bates stamped or otherwise marked with its "Document ID" listed on the logs. The documents shall be provided in the order

in which they appear on the logs. If any of the documents identified on the logs are duplicative, counsel shall indicate the "Document ID" of the duplicative document in the bottom margin of the document. Any portions that were redacted should be marked in yellow highlighter. Counsel shall cause hard copies of the withheld documents to be delivered to Judge Merriam's Chambers, 141 Church Street, Room 306, New Haven, CT, 06510, on or before **the close of business on Friday, February 12, 2021.**[10]

    C.   <u>Subject Matter Waiver</u>

    Plaintiff next contends that defendant waived the attorney-client privilege by voluntarily disclosing to plaintiff a certain email between Mr. Langevin and defendant's outside counsel, Todd Kaye, a partner with the law firm Bryan Cave (which firm currently represents defendant in this litigation). <u>See generally</u> Doc. #73 at 13-17. Plaintiff contends that Mr. Langevin and Mr. Rosenberg were improperly instructed not to answer questions regarding this subject, on the grounds of privilege, at their respective depositions. <u>See id.</u> at 14.

    Defendant responds that there has been no subject matter waiver of the privilege. <u>See</u> Doc. #74 at 16-17; Doc. #76 at 15-17. Relying on Illinois law, defendant asserts: "The Supreme

---

[10] There is also a question whether Mr. Rosenberg's drafts are protected by the privilege. <u>See</u> Doc. #73 at 12-13; Doc. #74 at 19-20; Doc. #76 at 12-14. The Court will address this issue during the <u>in camera</u> review.

Court of Illinois has held that subject matter waiver is not
applicable to extrajudicial communications." Doc. #74 at 17
(citing Ctr. Partners, 981 N.E.2d at 362-63); see also Doc. #76
at 14-17.

    "Among the exceptions to the attorney-client privilege is
the concept of 'waiver.'" Ctr. Partners, 981 N.E.2d at 356. "As
the holder of the attorney-client privilege, only the client may
waive it. Waiver is the voluntary relinquishment of a known
right that arises from an affirmative, consensual act." Selby v.
O'Dea, 156 N.E.3d 1212, 1243 (Ill. App. Ct. 2020) (citation and
quotation marks omitted). "There is no precise formula or
clearly defined set of parameters spelling out when a waiver
occurs; the determination must be made on a case-by-case basis."
Id.

    The leading Illinois case on subject matter waiver is
Center Partners, Ltd. v. Growth Head GP, LLC, 981 N.E.2d 345
(Ill. 2012). The parties take divergent views on the
implications of Center Partners. As previously noted, defendant
relies on this case to support its position that there has been
no waiver. See Doc. #74 at 17; Doc. #76 at 14. Plaintiff asserts
that (1) defendant has misconstrued the holding of Center
Partners, and (2) the facts of Center Partners are "not the
same" as those at issue here. Doc. #75 at 7-8.

The Court begins with a brief review of Center Partners.
There, the Illinois Supreme Court considered, for the first
time, whether "the subject matter waiver doctrine should not
apply to compel production of undisclosed, privileged
communications where the disclosed communications were
extrajudicial in nature and were not used to gain an advantage
in litigation." Ctr. Partners, 981 N.E.2d at 349.

Before embarking on its analysis of this issue, the
Illinois Supreme Court first addressed waiver generally,
acknowledging the "well-settled rule ... that when a client
discloses to a third-party a privileged communication, that
particular communication is no longer privileged and is
discoverable[.]" Id. at 356. The Court then described a "subject
matter waiver": "[T]he client's offer of his own or the
attorney's testimony as to a specific communication to the
attorney is a waiver as to all other communications to the
attorney on the same matter." Id. at 356-57 (citation and
quotation marks omitted) (emphasis in original). "The purpose
behind the doctrine of subject matter waiver is to prevent
partial or selective disclosure of favorable material while
sequestering the unfavorable." Id. at 357.

After examining numerous cases, including the Second
Circuit case of In re Von Bulow, 828 F.2d 94 (2d Cir. 1987), the

Illinois Supreme Court declined to extend the subject matter

waiver to extrajudicial disclosures because

> limiting application of subject matter waiver to
> disclosures made in litigation better serves the purpose
> of the doctrine. The purpose of the doctrine is to
> prevent a party from strategically and selectively
> disclosing partial attorney-client communications with
> his attorney to use as a sword, and then invoking the
> privilege as a shield to other communications so as to
> gain a tactical advantage in litigation. Expanding the
> doctrine to cover extrajudicial disclosures that are not
> made for tactical advantage in litigation would
> necessarily broaden the scope of the doctrine's purpose.!
> When a partial disclosure is made in the litigation
> context, the apparent prejudice that could result to the
> opposing party is obvious: a party has injected into the
> litigation communications with his attorney which may
> aid in the party's prosecution or defense of a claim,
> yet the party can also frustrate the truth-seeking
> process by claiming privilege when the opposition seeks
> to discover the full context of the confidential
> communications. Such an abuse of the judicial process
> should be looked upon with disfavor, and the doctrine of
> subject matter waiver ensures that the full context of
> the partial disclosure is discoverable so the court may
> fulfill its truth-seeking function and extend fairness
> to the opposing party. That same purpose is not served,
> however, when the doctrine is expanded to cover
> disclosures made before litigation is initiated or, in
> many cases, even contemplated.

Ctr. Partners, 981 N.E.2d at 362-63.[11] The Illinois Supreme Court

ultimately held "that subject matter waiver does not apply to

the extrajudicial disclosure of attorney-client communications

---

[11] Connecticut courts that have addressed this issue appear to
adopt the reasoning articulated in Von Bulow, with which the
Illinois Supreme Court also agreed. See, e.g., Berlin Pub. Sch.
v. Freedom of Info. Comm'n, No. HHB-CV-15-6029080-S, 2016 WL
785578, at *6 (Conn. Super. Ct. Feb. 2, 2016).

not thereafter used by the client to <u>gain an adversarial</u> <u>advantage</u> in litigation." <u>Id.</u> at 364 (emphases added).

Here, on May 14, 2019, Mr. Langevin forwarded to plaintiff an email from Attorney Kaye containing Attorney Kaye's "thoughts on Parimal's relocation expense situation[.]" Doc. #73-7 at 3.[12] Plaintiff asserts that "by virtue of the production of these emails, [defendant] has placed that advice directly in issue in this litigation, yet seeks to obstruct discovery as to the full scope its contents. ... Manitex seeks to rely on the 'sword' of Attorney Kaye's advice, while shielding its contents, in defiance of pertinent law." Doc. #73 at 15 (sic). Plaintiff continues: "The underlying facts regarding the discussions between Plaintiff and Defendant directly relate to the dispute and should be provided accordingly to achieve a fair and just result." <u>Id.</u> at 16; <u>see also</u> Doc. #75 at 8 ("Manitex affirmatively used the 'sword' of providing legal advice from its counsel to Parimal, affirmatively represented to Parimal that it disagreed with its attorney's advice, and now seeks to shield any discussions in that regard on the basis of privilege.").

---

[12] The document attached to plaintiff's opening memorandum consists of an email from Mr. Kaye to Mr. Langevin; an email from Mr. Langevin forwarding Mr. Kaye's email to plaintiff; an email from plaintiff responding to Mr. Langevin's email; and an email from Mr. Langevin responding to plaintiff's email. <u>See</u> <u>generally</u> Doc. #73-7.

Defendant contends, in pertinent part, that plaintiff "was aware of Manitex's position [on the issue of expense reimbursement] before this litigation was commenced and his counsel was permitted to ask deponents questions about the information in the Todd Kaye email. Thus, Plaintiff has not suffered any prejudice by this pre-litigation extrajudicial disclosure of the Todd Kaye email." Doc. #76 at 16.

There is no dispute that this specific communication from Attorney Kaye to Mr. Langevin has been disclosed to plaintiff. There is also no dispute that this communication was made extrajudicially. Plaintiff thus appears to contend that defendant has used the communication to gain an adversarial advantage in this litigation.

It is unclear what, if any, advantage defendant has gained by disclosing the Kaye email. Indeed, plaintiff does not argue that defendant has gained any such advantage, but merely claims that "the production of these emails[] has placed" Attorney Kaye's "advice directly in issue[.]" Doc. #73 at 15. Again, it is unclear how Attorney Kaye's advice has been placed in issue. Here, as in Center Partners, there is "no evidence that defendant[] ha[s] claimed reliance, or [is] planning to claim reliance, on legal advice in its defense of this case. ... If any party has injected defendant['s] lawyers' legal advice into this case, it is plaintiff[,]" who has sought the production of

privileged documents. Ctr. Partners, 981 N.E.2d at 368. Nor is there any evidence that defendant has "inject[ed] an issue into the case that relies on privileged attorney-client communications, [such that] fundamental fairness requires ... the opposing party be allowed to examine those otherwise privileged communications." Selby, 156 N.E.3d at 1244. Simply, plaintiff has made no specific showing of prejudice which would warrant a finding of subject matter waiver. See id. ("[L]itigants cannot hide behind the privilege if they are relying upon privileged communications to make their case." (citation and quotation marks omitted)).

Accordingly, there is no subject matter waiver with respect to the Kaye email. The Court **DENIES** plaintiff's motion to compel [**Doc. #63**], and **GRANTS** defendant's motion for protective order [**Doc. #64**] with respect to this issue.[13]

## V.   Conclusion

For the reasons stated, plaintiff's Motion to Compel [**Doc. #63**] is **TAKEN UNDER ADVISEMENT, in part, and DENIED, in part**, and defendant's Motion for Protective Order [**Doc. #64**] is **TAKEN UNDER ADVISEMENT, in part, and GRANTED, in part**.

---

[13] If, however, defendant later injects its attorney-client communications into the litigation, the Court may revisit this issue. See Ctr. Partners, 981 N.E.2d at 368.

SO ORDERED at New Haven, Connecticut, this 3rd day of
February, 2021.

```
           /s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE
```