## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

PARIMAL,

    *Plaintiff*,

    v.

MANITEX INTERNATIONAL, INC.,

    *Defendant*.

No. 3:19-cv-01910

### RULING ON MOTION TO DISMISS

Plaintiff Parimal brings this action against Manitex International, Inc. ("Manitex"), alleging seven state law causes of action arising out of Parimal's former employment with Manitex. Compl., ECF No. 23. Parimal seeks to recover damages based on Manitex's alleged breach of contract, breach of the implied covenant of good faith and fair dealing, intentional and negligent misrepresentations, wrongful termination of employment, and unfair trade practices. *Id.* at 1. Manitex filed a partial motion to dismiss, seeking to dismiss Count Six (wrongful termination) of the amended complaint for lack of personal jurisdiction and Counts Two (promissory estoppel), Three (breach of implied covenant of good faith and fair dealing), and Seven (violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq. ("CUTPA")) for failure to state a claim. ECF No. 25. For the reasons set forth below, the defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

I.      BACKGROUND

        The following facts are drawn from Parimal's operative complaint and the employment

agreement attached to Manitex's motion.[1]  These facts are accepted as true for the purpose of this

ruling.

        Plaintiff—an individual whose legal and only name is Parimal—is domiciled within the

State of Connecticut.  ECF No. 23 at 1.  Manitex is a corporation and citizen of the State of

Michigan.  *Id.* at 3.  Manitex transacts and regularly conducts business in the State of

Connecticut through two authorized agents.  *Id.* at 3-4.

        A.      **Terms of Parimal's Employment with Manitex.**

        Prior to joining Manitex as an executive vice president, Parimal was a consultant

providing advisory services to Manitex.  During the provision of those consulting services

Parimal established what he reasonably believed was a relationship of trust and fair dealing with

David Langevin, the Chief Executive Officer and Chairman of Manitex.  In the spring and

summer of 2018, Langevin actively recruited Parimal to join Manitex as a senior executive

officer.  *Id.* at 1, 4.  At the time, Parimal had another lucrative opportunity with a different

company.  Specifically, Parimal had been offered the opportunity to consult with his former

employer Terex and to be the principal agent for the sale of one of Terex's businesses.  During

the negotiations with Langevin, Parimal requested that he be permitted to pursue the opportunity

---

[1] Because the employment contract is referenced and quoted throughout the Complaint, I may consider that contract (ECF No. 25-2) in its entirety when considering Manitex's motion to dismiss.  *See Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir. 1998) (On motion to dismiss, court is free to consider "documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken."); *Cortec Industries, Inc. v. Sum Holding, L.P.*, 949 F.2d 42, 47 (2d. Cir. 1991) ("when a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] . . . which is integral to the complaint, the defendant may produce the [document] when attacking the complaint for its failure to state a claim . . ").  I do not consider any other affidavits or exhibits filed by the parties for the purpose of evaluating Manitex's motion to dismiss Counts Two, Three, and Seven under Rule 12(b)(6).

with Terex and to continue to work as a consultant for Manitex.  However, Langevin told him that to join Manitex, he had to forgo any work with Terex.  As incentive to Parimal to forgo his other opportunity, Langevin told Parimal that, in addition to his regular compensation at Manitex, he would have an additional "success fee potential" at Manitex of $1,500,000, which would match the opportunity at Terex.  *Id.* at 1, 4-5.

Based on the promises and representations made by Langevin, Parimal signed an offer letter in Westport, Connecticut in August 2018.  The offer letter was prepared and drafted by Manitex and printed with the Manitex logo.  In addition, the letter did not contain an integration or merger clause providing that the letter was the complete and final agreement between Manitex and Parimal regarding the terms and conditions of his employment.  In fact, Langevin, on behalf of Manitex, made a number of representations and promises to Parimal that were not set forth in the written employment agreement.  Parimal started working for Manitex, as a resident of Connecticut, on September 2, 2018.  *Id.* at 5.

As soon as Parimal rejected the other opportunity, Langevin began to breach promises made to Parimal one by one.  Initially, Langevin refused to put in writing his promise to provide a matching success fee, instead substituting other consideration.  *Id.* at 5.  Langevin also reneged on his promise to give Parimal "change of control" protection.  *Id.*  In addition to a base salary of $300,000, Parimal was promised by Langevin that he would receive a bonus based solely on the performance of Manitex.  He was also promised that he would receive a minimum guaranteed bonus for 2018.  That bonus would have resulted in a payment of $200,000.  In breach of that promise, Parimal was paid only $50,000.  Langevin acknowledged the failure to make the promised payment, but offered to substitute a different payment mechanism, i.e., a contract for

potential mergers and acquisitions work that included a success fee. Despite promises, that contract was never provided, and payment was never made. *Id.* at 5-6.

Parimal's employment offer included certain relocation incentives, including reimbursement of relocation expenses for his family. This provision was altered to give Parimal an advance and latitude to spend the advance money, in his discretion, for a down payment toward the purchase of a house in Texas. However, the company subsequently reinterpreted the amendment, unilaterally deciding that Parimal could not use the advance for the down payment and demanding that Parimal return the advance money. Langevin withheld and Manitex continues to withhold reimbursement of approximately $23,000 in relocation expenses and approximately $8,000 in other standard travel and entertainment expenses. While this disagreement was continuing, in a series of communications, by telephone, in person and by email, Langevin agreed with Parimal's position on the true nature of the advance and the intent behind it. On a couple of occasions, he told Parimal that he had approved the reimbursement of withheld expenses and Parimal should be shortly receiving them, but these promises were never fulfilled. *Id.* at 6. Langevin also promised to Parimal that he would receive certain equity compensation, which was never paid, and a company-leased car, which, although it was originally provided, was withdrawn. *Id.*

Parimal was induced by these promises and other promises made by Langevin to forgo an opportunity that had been offered to him, to join Manitex, and to move from Connecticut, where he continues to maintain a residence, to Texas. These representations were both oral and in writing. In addition, Parimal's wife left her employment in Connecticut to move to Austin with him. *Id.* at 7. The bonus payment promised to Parimal by Manitex was a significant component of his total overall compensation and a material reason Parimal accepted the Manitex offer and

4

turned down the other opportunity.  *Id.* at 8.  Parimal's bonus, based on Langevin's

representations, had a minimum guarantee, and neither the Board nor senior management had a

basis to breach that guarantee.  Moreover, Parimal is not aware of any performance review

process, and so any decision by Manitex not to comply with his bonus promise would be

arbitrary at best and possibly punitive and retaliatory.  *Id.* at 8.  Manitex's proxy states that

bonuses were approved at 50% of the target and Parimal's bonus was only 16.67% of his

target—a violation of the terms of his employment, which required a minimum bonus payment

of 75% of his target.  *Id.* at 9.

It appears from statements made by Langevin to Parimal, and in email exchanges

between Langevin and another individual on August 16 and 17, 2018, that Langevin was trying

to hide the compensation-related promises made to Parimal from other senior managers at

Manitex and "perhaps the Board as well."  *Id.*  Langevin tried to hide Parimal's compensation

from other senior officers by explaining to another senior executive that Parimal's higher base

pay was to compensate Parimal for the sacrifices he made by working in Italy and commuting

between the U.S. and Italy.  *Id.*  Langevin also misled both Parimal and other senior executives

when he stated to Parimal that 75% of his bonus for 2018 would be guaranteed regardless of the

performance of Manitex.  Langevin hid that promise from other senior executives.  In an email

exchange in August 2018 between Langevin and another Manitex Board member, Langevin

confided that he was trying to hide the formula for calculating the bonus from at least one other

senior manager at Manitex.  *Id.* at 7-8.

In addition, Langevin concealed from other senior officers the promises made to Parimal

because he was concerned that the total compensation promised to Parimal would cause

dissension among other senior officers.  *Id.* at 2.  While Parimal was consulting for Manitex, his

consulting fee became a source of envy that resulted in a subsequent bonus decision by Manitex that was contrary to the promises made to him.  Langevin admitted to Parimal that if he had left Manitex after the consulting assignment was over, other Manitex employees "would have been fine, but by joining the firm at the promised salary and bonus, issues developed with senior staff."  *Id.* at 8.

> **B.    Practices Inconsistent with GAAP and the Termination of Parimal's Employment with Manitex.**

Langevin engineered Parimal's abrupt separation from the company based in part on issues over failure to pay Parimal his promised compensation, including bonus payments, and in part on Parimal's refusal to participate in accounting practices inconsistent with Generally Accepted Accounting Principles ("GAAP").  *Id.* at 2.  After the books had closed for the third quarter in October of 2018, while Parimal was still residing in Connecticut, a senior executive of Manitex wrote to other executives, copying Langevin, directing them to manage earnings and "improve the 3Q'18 miss" better to match third quarter goals.  In another email, he called the third quarter results "not acceptable".  He directed one business head to work during his twelve-hour flight "to figure out what additional work could be done to improve" the results.  The senior executive – in another email written in October after the books had closed – pressured business heads to "focus on closing opportunities in process" so that "teams will exceed the goal".  *Id.* at 9.  The same executive tried to pressure "local management" with arbitrary and unrealistic order bookings in October 2018, while Parimal was still in Connecticut, and again in March 2019 purportedly to report higher backlog numbers on the earnings calls to hide the true business condition of the business from the investors.  *Id.*  Parimal had previously raised concerns about the accuracy of the backlog data as it was historically reported as not truly being third party

orders.  The same executive with Langevin's approval dismissed Parimal's concern on a conference call with the Chief Financial Officer ("CFO") and others.  *Id.*

In April 2019, Parimal became aware of historical questionable revenue recognition practices in Italy of "bill and hold" above and beyond that permissible by GAAP and immediately brought this to the attention of Langevin and the CFO.  Both advised him to taper this practice gradually because a sudden compliance with GAAP would make earnings look worse.  When Parimal demanded that such advice be provided in writing, both refused and "soon after Parimal found himself unemployed."  *Id.* at 9-10.

Parimal's abrupt separation from Manitex, in addition to being the result of disputes over Manitex's failure to pay the compensation agreed to by the parties, was retaliation for Parimal's resistance to repeated demands by a senior officer to manage Manitex's earnings by inflating backlog data, engaging in deceptive "bill and hold" practices, and demanding that business heads "improve" earnings after the books had closed.  Those actions were inconsistent with GAAP and misleading to investors.  *Id.* at 2.  As a consequence of his abrupt separation, Parimal is left maintaining residences in both Texas and Connecticut, adding to the damages caused by the failure of Manitex to pay his promised compensation, including a bonus payment for the portion of 2019 that he worked at Manitex, and reimbursement for expenses.  *Id.* at 10.

Parimal asserts claims for relief based on breach of contract (Count One), promissory estoppel (Count Two), breach of the implied covenant of good faith and fair dealing (Count Three), fraudulent misrepresentation (Count Four), negligent misrepresentation (Count Five), wrongful termination (Count Six), and violation of CUTPA (Count Seven).

## II.     LEGAL STANDARD

### A.     Rule 12(b)(2) Motion to Dismiss

"In defending against a 12(b)(2) motion to dismiss, plaintiff bears the burden of showing the court has jurisdiction over the defendant," and the "burden is apportioned based on how far the case has progressed." *Corning Inc. v. Shin Etsu Quartz Products Co.*, 242 F.3d 364, at *2 (2d Cir. 2000). Before discovery, "[a] plaintiff may carry this burden by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a prima facie showing of jurisdiction." *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) (internal quotation marks omitted); *accord Corning Inc.*, 242 F.3d at *2.[2] The district court has "considerable procedural leeway" in deciding Rule 12(b)(2) motions, and it may accept affidavits if it so chooses. *See Marine Midland Bank v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *see also Dorchester Fin. Sec., Inc. v. Banco BRJ*, 722 F.3d 81, 86 (2d Cir. 2013) (in assessing a Rule 12(b)(2) motion, a court may "consider[] materials outside the pleadings . . . ."). In deciding whether a plaintiff has made a prima facie showing of personal jurisdiction, the court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills*, LLC, 616 F.3d 158, 163 (2d Cir. 2010).

"In assessing whether personal jurisdiction is authorized, the court must look first to the long-arm statute of the forum state . . . . If the exercise of jurisdiction is appropriate under that statute, the court must decide whether such exercise comports with the requisites of due process." *Whitaker*, 261 F.3d at 208 (internal quotation marks and citation omitted).

---

[2] While discovery has commenced as to all other claims, discovery as to Count Six—Parimal's wrongful termination claim that Manitex seeks to dismiss under Rule 12(b)(2)—has been stayed pending the court's ruling on Manitex's motion to dismiss. *See* ECF Nos. 17, 101.

### B.      Rule 12(b)(6) Motion to Dismiss

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The court accepts as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id.*, and "must draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014).  The court may consider any documents attached to, incorporated in by reference, or otherwise heavily relied upon in the complaint when deciding the motion.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.  Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal citations and quotation marks omitted)).

## III.     DISCUSSION

As noted above, Manitex has moved to dismiss Count Six (wrongful termination) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) and Counts Two (promissory estoppel), Three (breach of implied covenant of good faith and fair dealing), and Seven (violation of CUTPA) for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  ECF No. 25.  For the reasons

discussed below, I deny Manitex's motion as to Counts Six, Two, and Three and grant Manitex's

motion as to Count Seven.  I address each claim in turn.

> ### A.      Pendent Personal Jurisdiction Permits Hearing Parimal's Wrongful Termination Claim.

Count Six of Parimal's operative complaint alleges that Manitex wrongfully terminated

Parimal's employment and that, as a result, Parimal suffered harm.  ECF No. 23 at 13-14.  The

wrongful termination count incorporates all paragraphs prior to Count One, i.e., all the factual

allegations set forth above, and specifically alleges that "[o]ver several months beginning in

October of 2018, while Parimal was still residing in Connecticut, he resisted the efforts of the

President of Manitex to alter the local books of Manitex's Italian subsidiary after the books had

closed, and to inflate backlog data." *Id.* at 14.  "At that time, Parimal asked for written

instructions from senior officers of Manitex confirming the direction to continue the practice of

'bill and hold' over and above what GAAP permits, but the officers refused." *Id.*  Parimal then

alleges that the "contract and employment, offered to, and accepted by him in the State of

Connecticut in August of 2018, was terminated in retaliation for objecting to Manitex's practices

as inconsistent with GAAP and misleading to investors, objections he made while he was still

residing in Connecticut." *Id.*  In addition, Parimal alleges that his termination was "engineered .

. . based in part on issues over failure to pay Parimal his promised compensation, including

bonus payments, and in part on Parimal's refusal to participate in accounting practices

inconsistent with GAAP."  ECF No. 23 at 2.

Manitex moves to dismiss Parimal's wrongful termination claim for lack of personal

jurisdiction over Manitex as to that claim under Rule 12(b)(2).  ECF No. 25-4 at 6, 8-13.

Manitex argues that: (1) the court does not have general jurisdiction over Manitex because

Manitex is not "at home" in Connecticut under the Supreme Court's decisions in *Daimler AG v.*

*Bauman*, 571 U.S. 117 (2014), and *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915 (2011); (2) the court does not have specific jurisdiction over Manitex under Connecticut's long-arm statutes because "Parimal's wrongful termination claim does not arise out of any business" or "tortious conduct" by Manitex in Connecticut, ECF No. 25-4 at 11, and Parimal does not otherwise allege facts sufficient for jurisdiction to attach under any other provision of Connecticut's long-arm statutes, *id.* at 13; ECF No. 31 at 10; and (3) the doctrine of pendent personal jurisdiction does not apply because Parimal's wrongful termination claim does not share a "common nucleus of operative fact" with his breach of contract claim and, in any case, the doctrine is no longer good law under *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017), ECF No. 100.  I find that I may entertain Parimal's wrongful termination claim under the doctrine of pendent personal jurisdiction because that claim shares a common nucleus of operative fact with his breach of contract claim, as to which Manitex does not contest personal jurisdiction.  As a result, I need not, and do not, consider the parties' remaining arguments regarding personal jurisdiction as to Parimal's wrongful termination claim.

While it is true that "[a] plaintiff must establish the court's [personal] jurisdiction with respect to *each* claim asserted[,]" *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 24 (2d Cir. 2004) (emphasis in original), the Second Circuit has recognized an exception to this rule, even in cases premised on diversity jurisdiction: where "a defendant properly is brought before a district court on a claim covered by [the forum state's long-arm statute], the court may entertain claims that are not expressly covered by the long-arm statute, so long as they derive from the same nucleus of operative fact as claims that are."  *Hanly v. Powell Goldstein, L.L.P.*, 290 Fed. Appx. 435, 438 (2d Cir. 2008) (citing *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716 (2d Cir. 1980)).  The

11

Second Circuit has referred to this doctrine as "pendent personal jurisdiction." *Hanly*, 290 Fed.
Appx. at 438.

Here, Manitex does not contest the propriety of personal jurisdiction as to Parimal's
breach of contract claim under Connecticut's long-arm statute applicable to foreign corporations,
Conn. Gen. Stat. § 33-929(f)(1), because that claim "arises out of or is based upon the
employment contract he entered into with Manitex [which was made in Connecticut]." ECF No.
25-4 at 13. Thus, the "issue is therefore not whether [Manitex] can be brought before the court,
but whether [Parimal] may now advance as applicable to the same basic facts various legal
theories in addition to the [breach of contract] theory on which service was based." *Hargrave*,
646 F.2d at 719. Following the Second Circuit's decisions in *Hanly* and *Hargrave*, I find that it
is appropriate to hear Parimal's wrongful termination claim—even if that claim could not
otherwise be heard in this court for a lack of personal jurisdiction over Manitex—under the
doctrine of pendent personal jurisdiction.

That is so because Parimal's wrongful termination claim shares the same "nucleus of
operative fact" as his breach of contract claim. The facts underlying both claims derive from and
relate to Parimal's employment with Manitex, the alleged oral and written promises made by
Manitex to Parimal—some of which were allegedly memorialized in the employment
agreement—and the circumstances surrounding the termination of Parimal's employment,
including issues raised by Parimal regarding alleged inconsistencies with GAAP. *See* ECF No.
23 at 2 ("[Langevin] engineered Parimal's abrupt separation from the company based in part on
issues over failure to pay Parimal his promised compensation, including bonus payments, and in
part on Parimal's refusal to participate in accounting practices inconsistent with GAAP.
Parimal's abrupt separation from Manitex, in addition to being the result of disputes over

Manitex's failure to pay the compensation agreed to by the parties, was retaliation for Parimal's resistance to repeated demands by a senior officer to manage Maintex's earnings by inflating backlog data, engaging in deceptive 'bill and hold' practices, and demanding that business heads 'improve' earnings after the local books had closed.").  In addition, these events all occurred over a short time period—Langevin allegedly began recruiting Parimal in the summer of 2018 and Parimal was allegedly fired less than a year later in, or shortly after, April 2019.  As a result, I find that Parimal's wrongful termination and breach of contract claims "derive from a common nucleus of operative fact such that they would ordinarily be expected to be tried in one judicial proceeding . . . ."  *Hargrave*, 646 F.2d at 719; *see also id.* at 721 (holding that the "district court, having acquired personal jurisdiction over defendant [as to the fraud claim under New York's long-arm statute], has power to determine all of the claims asserted in the complaint [(namely, breach of contract, breach of express warranty, breach of implied warranty of merchantability, breach of warranty of fitness for a particular purpose, and negligent performance of the contract)]" because those claims "are based on essentially the same facts" as the fraud claim.); *Hanly*, 290 Fed. Appx. at 438 (holding that district court "was permitted to hear [plaintiff's libel] claim under the doctrine of pendent personal jurisdiction" because it was "based on the same factual predicate as the malicious prosecution and IIED claims"); *Channer v. Dep't of Homeland Sec.*, 527 F.3d 275, 280 (2d Cir. 2008) (in the context of *res judicata*, "[t]hree indicia determine whether the second suit involves the same claim *or nucleus of operative fact* as the first: (1) whether the underlying facts are related in time, space, origin, or motivation; (2) whether the underlying facts form a convenient trial unit; and (3) whether their treatment as a unit conforms to the parties' expectations." (internal quotation marks omitted) (emphasis added)).  As a result,

13

Manitex's motion to dismiss Parimal's wrongful termination claim for lack of personal jurisdiction is denied.

Recent Supreme Court precedent does not mandate a contrary conclusion. Nowhere in the parties' supplemental briefs addressing the doctrine of pendent personal jurisdiction do they identify a controlling decision that overrules the Second Circuit's decisions in *Hanly* and *Hargrave*. Rather, the briefs focus on the Supreme Court's decision in *Bristol-Myers Squibb v. Superior Court of California*, 137 S. Ct. 1773 (2017). *See* ECF Nos. 99, 100. But *Bristol-Myers Squibb* is distinguishable from the facts here because that case dealt with the propriety of exercising personal jurisdiction over out-of-state plaintiffs who had no case-related connection to the forum state, not, as here, an out-of-state defendant over whom the court already has personal jurisdiction with respect to at least one claim. *See Bristol-Myers Squibb*, 137 S. Ct. at 1777. The issue in *Bristol-Myers Squibb* concerned personal jurisdiction over parties who lacked any ties with the forum; the issue here concerns personal jurisdiction with respect to a single claim against a party who is already before the court. In addition, the doctrine of pendent personal jurisdiction is mentioned nowhere in *Bristol-Myers Squibb* and, to the extent one could read that case and other recent Supreme Court precedent on personal jurisdiction to conflict with the doctrine, the parties have not identified—and I am not aware of—any Second Circuit case acknowledging such a conflict or any Supreme Court case expressly overruling the doctrine. To the contrary, cases within the Second Circuit have continued to recognize its viability. *See, e.g.*, *Charles Schwab Corporation v. Bank of America Corporation*, 883 F.3d 68, 88 (2d Cir. 2018) (recognizing doctrine of pendent personal jurisdiction where the anchor claim was federal cause of action); *N. Fork Partners Inv. Holdings, LLC v. Bracken*, No. 20-CV-2444 (LJL), 2020 WL 6899486, at *12 (S.D.N.Y. Nov. 23, 2020) ("While the traditional application of pendent

personal jurisdiction applies when the anchor claim is federal and the pendent claim is a state law claim, the Second Circuit has endorsed extending the doctrine to instances where both the anchor and pendent claims are state law claims." (collecting cases)).  Until such time as the Second Circuit expressly acknowledges such a conflict or the Supreme Court or the Second Circuit sitting en banc expressly overrules *Hanly* and *Hargrave*, I must assume the doctrine's continued viability.  *See Medwig v. Long Island R.R.*, No. 06 CIV. 2568 (FM), 2007 WL 1659201, at *4 (S.D.N.Y. June 6, 2007) ("It is settled law that a district court in [the Second] Circuit is bound by [the Circuit's] decisions unless and until they have been overruled by the Supreme Court or the law is otherwise changed." (collecting cases)).  Lastly, while the doctrine of pendent personal jurisdiction is a discretionary doctrine, *see Charles Schwab Corporation*, 883 F.3d at 88, I find that its use is appropriate here in light of the "federal judiciary['s] . . . obvious interest in every litigation in having the whole case tried at one time" and in "discouraging duplicative litigation not only within a single district but within the entire system[,]" *Hargrave*, 646 F.2d at 720, and my exercising jurisdiction over Manitex with respect to Parimal's wrongful termination claim does not "work an undue hardship" on Manitex for the same reasons that pendent personal jurisdiction is appropriate, *id*.

### B.    Parimal May Assert a Promissory Estoppel Claim.

Count Two of Parimal's complaint alleges that, "[i]n addition to the written employment agreement offered to Parimal, Manitex made numerous clear and definite promises regarding additional terms and conditions of Parimal's employment which were calculated to induce Parimal to act upon the basis of those representations."  ECF No. 23 at 11.  Parimal "had established what he believed to be a relationship of trust with Mr. Langevin based on his previous work as a consultant for Manitex" and "reasonably rel[ied] on promises made by Mr.

Langevin when he accepted Manitex's offer of employment and moved with his wife from Connecticut to Texas." *Id.* Parimal further alleges that "Manitex did not intend to fulfill these promises to Parimal because there was concern that those promises were inconsistent with the terms and conditions of the employment of other Manitex senior executives." *Id.* Lastly, Parimal alleges that he "suffered losses in reliance on factual statements made by Manitex that were not fulfilled, including, without limitation, moving his family to another state, foregoing business and employment opportunities and reasonably expecting compensation which he never, in fact, received." *Id.*

Manitex seeks to dismiss Parimal's promissory estoppel claim under Rule 12(b)(6) because Parimal "relies on the existence of the employment agreement as the basis for his claim." ECF No. 25-4 at 15. Under Connecticut law, Manitex argues, any reliance on an alleged binding contract makes a promissory estoppel claim legally insufficient. *Id.* Parimal responds by arguing that the complaint adequately states a claim of promissory estoppel because it alleges "numerous clear and definite promises regarding additional terms and conditions of Parimal's employment", "a reasonable and foreseeable reliance by Parimal", and "the losses suffered by Parimal in reliance on factual statements made by Manitex." ECF No. 28 at 20. I agree with Parimal.

"Promissory estoppel is asserted when there is an absence of consideration to support a contract." *Glazer v. Dress Barn, Inc.*, 873 A.2d 929, 963 (Conn. 2005). "In order to prevail on a claim for promissory estoppel, a plaintiff must establish 1) a clear and definite promise, 2) a change in position in reliance on the promise, and 3) resulting injury." *Lo v. AT & T Servs., Inc.*, No. NNHCV186080880, 2018 WL 4865064, at *2 (Conn. Super. Ct. Sept. 21, 2018); *accord Stewart v. Cendant Mobility Servs. Corp.*, 837 A.2d 736, 742-43 (Conn. 2003). The Connecticut

16

Supreme Court has "permitted the jury to consider in the alternative claims for breach of contract and for promissory estoppel when there is an issue of whether the agreement may be too indefinite to allow for contract formation." *Glazer*, 873 A.2d at 963; *see also* Fed. R. Civ. P. 8(d)(2), (3) (permitting alternative pleading and inconsistent claims).

In support of its motion to dismiss the promissory estoppel count, Manitex relies on a Connecticut Superior Court case in which "there [were] no disputes concerning the legitimacy of the [employment] agreement or the definiteness of the parties' contract terms." *Golek v. St. Mary's Hosp.*, No. CV085007118, 2008 WL 4151328, at *6 (Conn. Super. Ct. Aug. 22, 2008). But here, Parimal expressly alleges that Manitex made a number of oral and written promises— promises that Manitex disputes were made—on which he relied in accepting employment and declining other lucrative opportunities. These alleged promises include, for example, an additional success fee potential of $1.5 million, ECF No. 23 at 5, a minimum guaranteed bonus of $200,000, *id.* at 6, and that a bonus of 75% of his target for 2018 would be guaranteed, *id.* at 7, 9. In addition, because at the motion to dismiss stage I must draw all reasonable inferences in Parimal's favor, I construe Parimal's reference to the written employment agreement in the promissory estoppel claim simply as a way of alleging the written promises comprising part of the promissory estoppel, in the event those promises are too indefinite to form a contract or in the event the contract fails for lack of consideration. So construed, Parimal alleges, as an alternative to his breach of contract claim: (1) a number of promises made both orally and in writing as described in detail above; (2) a change in position in reliance on those promises, i.e., foregoing the opportunity at Terex and moving his family to Texas in reliance on those promises; and (3) resulting injury, including damages caused by the failure to pay the promised compensation, reimbursement or expenses, moving his family to Texas for a job he no longer has, and declining

17

the opportunity at Terex. Taken together, these allegations state a valid promissory estoppel claim. *See Lo*, 2018 WL 4865064, at *2. As a result, I must deny Manitex's motion to dismiss Parimal's promissory estoppel claim for failure to state a claim.

### C. Parimal Adequately Alleges a Claim of Breach of the Implied Covenant of Good Faith and Fair Dealing.

Count Three of the complaint alleges that "[t]he contractual relationship among the parties carried with it an implied covenant of good faith and fair dealing" and that, "[b]y failing to comply with the terms of the parties' agreement, both with respect to the written employment agreement and the numerous oral representations made by Langevin on Manitex's behalf, making the factual representations as referenced [in the complaint] and engaging in deceptive conduct, Manitex has engaged in conduct that is in bad faith, without justification, and undertaken in a willful or deceitful manner." ECF No. 23 at 12. Parimal further alleges that he has been damaged as a result of the alleged breach. *Id.*

Manitex moves to dismiss Count Three because "Parimal does not allege that the compensation set forth in his Employment Agreement or that the terms of his employment were contrary to public policy." ECF No. 25-4 at 17. Parimal responds by arguing that his allegations state a claim for breach of the implied covenant of good faith and fair dealing and that a violation of public policy is not a required element of such a claim. *See* ECF No. 28 at 20-22. I agree with Parimal.

"Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Fairfield Fin. Mortg. Grp., Inc. v. Salazar*, No. CV000339752S, 2002 WL 1009809, at *3 (Conn. Super. Ct. Apr. 23, 2002) (quoting *Gupta v. New Britain Gen. Hosp.*, 687 A.2d 111, 122 (Conn. 1996)). To state a claim of breach of the covenant of good faith and fair

18

dealing, a plaintiff must plead three essential elements: (1) "that the plaintiff and the defendant were parties to a contract under which the plaintiff reasonably expected to receive certain benefits"; (2) "that the defendant engaged in conduct that injured the plaintiff's right to receive some or all of those benefits"; and (3) "that when committing the acts by which it injured the plaintiff's right to receive benefits it reasonably expected to receive under the contract, the defendant was acting in bad faith." *Fairfield Fin. Mortg. Grp., Inc.*, 2002 WL 1009809, at *3. "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive." *Habetz v. Condon*, 618 A.2d 501, 504 (Conn. 1992) (citation omitted). "Bad faith means more than mere negligence; it involves a dishonest purpose." *Id.*

Parimal's allegations are sufficient to state a claim for breach of the implied covenant of good faith and fair dealing because Parimal alleges that: (1) he and Manitex were parties to a contract that included both oral and written terms; (2) Manitex injured Parimal by failing to pay the compensation, reimbursement, and other benefits promised; and (3) Manitex did so by engaging in conduct that, if true, is sufficient to infer bad faith. Specifically, Manitex allegedly made "factual misstatements and false promises" regarding Parimal's compensation and terms and conditions of employment to convince Parimal to forego other lucrative opportunities. ECF No. 23 at 1. In addition, Parimal alleges that "[a]mong other false statements made by Langevin, he promised Parimal that his compensation at Manitex would be equivalent to the compensation he would have earned if had accepted the opportunity he had agreed to forgo to join Manitex" and that Langevin "never intended to keep that and other promises regarding Parimal's compensation." *Id.* at 2. Langevin also allegedly engaged in deceptive conduct, "conceal[ing]

the promises made to Parimal from other senior officers at Manitex because he was concerned that the total compensation promised to Parimal would cause  dissension among other senior officers." *Id.* Lastly, Parimal alleged that his termination was "engineered . . . based in part on issues over failure to pay Parimal his promised compensation, including bonus payments, and in part on Parimal's refusal to participate in accounting practices inconsistent with GAAP." *Id.* Taken together, these allegations, accepted as true, are sufficient to infer bad faith and a "dishonest purpose" on the part of Manitex as those terms are defined under Connecticut law, *Habetz*, 618 A.2d at 504, and thus to state a claim for breach of the implied covenant of good faith and fair dealing.  As a result, I must deny Manitex's motion to dismiss as to Count Three for failure to state a claim.

Manitex's reliance on *Verrastro v. Middlesex Ins. Co.*, 540 A.2d 693, 699 (1988) does not change this outcome.  Manitex argues that Parimal's claim fails because he does not allege that the terms of his compensation violate public policy.  But the implied covenant of good faith and fair dealing does not require such an allegation.  Manitex correctly cites the *Verrastro* Court as stating that "[t]he concept of good faith and fair dealing is [e]ssentially . . . a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." 540 A.2d at 699 (internal quotation marks omitted).  "The principle, therefore, cannot be applied to achieve a result contrary to the clearly expressed terms of a contract, unless, possibly, those terms are contrary to public policy." *Id.*  Manitex focuses merely on the latter clause regarding public policy and appears to assume that Parimal seeks to "achieve a result contrary to the clearly expressed terms of a contract." *Id.*  To the contrary, as discussed above, Parimal makes allegations that are consistent with the clearly expressed terms

of a contract (one including both oral and written terms).  He is thus not required to allege any violation of public policy.

**D.      Parimal Does Not State a Valid Claim for Relief under CUTPA.**

Count Seven of the operative complaint alleges that "Manitex's conduct, particularly in making a series of factual misrepresentations and promises calculated to induce Parimal to change his conduct which led him to forego substantial other professional opportunities and disrupt his own personal and family circumstances in order to induce him to pursue a relationship with Manitex, constitutes a pattern and practice of unfair and deceptive acts or practices."  ECF No. 23 at 14.  Parimal alleges that "Manitex's conduct was engaged in as a part of its trade and business relating to its ongoing business operations both internationally and within the State of Connecticut."  *Id.* at 15.  In addition, Parimal alleges that "Manitex's deception, misrepresentations and false promises, specifically designed to induce Parimal to act on the basis of those misrepresentations, were and are oppressive, unscrupulous and unethical and have caused ascertainable damages, in the form of lost business opportunities, lost income and personal disruption to Parimal."  *Id.*

Manitex argues that Parimal's CUTPA violation claim should be dismissed because "the employer-employee relationship does not fall within the definition of trade or commerce for the purposes of an action under CUTPA."  ECF No. 25-4 at 13 (quoting *Quimby v. Kimberly Clark Corp.*, 613 A.2d 838, 844 (Conn. App. 1992)).  Parimal responds by arguing that his allegations are sufficient to state a claim under CUTPA because he has identified an alleged practice that offends public policy and that he can maintain an action under CUTPA even if he is not a "consumer" as that term is defined under statute.  ECF No. 28 at 18-19.  I agree with Manitex.

21

Connecticut caselaw under CUTPA makes clear that "an employer-employee relationship does not give rise to a CUTPA claim . . . ."  *Sempey v. Stamford Hosp.*, 221 A.3d 839, 848 (Conn. App. 2019); *see also United Components, Inc. v. Wdowiak*, 684 A.2d 693, 696 (Conn. 1996) (affirming trial court's determination that "CUTPA was inapplicable to [the plaintiff's] claim because his claim involved an employer-employee relationship and did not rise to the level of trade or commerce cognizable under CUTPA.").  Thus, because Parimal's allegations all arise out of the employer-employee relationship he had with Manitex, and because he does not make any allegations regarding "acts committed by [Manitex] in the conduct of any trade or commerce", I must grant Manitex's motion to dismiss Count Seven for failure to state a claim under CUTPA.  *Sempey*, 221 A.3d at 848 (internal quotation marks omitted); *see also id.* (noting that under CUTPA, the "terms trade and commerce are defined in [Connecticut] General Statutes § 42-110a[4] as 'the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value in this state'").

## IV.    CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss, ECF No. 25, is hereby

GRANTED IN PART as to Count Seven (CUTPA violation) and DENIED IN PART as to

Counts Two (promissory estoppel), Three (breach of the implied covenant of good faith and fair

dealing), and Six (wrongful termination).


IT IS SO ORDERED.

_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:          Hartford, Connecticut
                March 25, 2021