UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| PARIMAL, </br>     *Plaintiff*, </br> </br> v. </br> </br> MANITEX INT'L, INC., </br>     *Defendant*. | ) </br> ) </br> ) </br> )   3:19-CV-1910 (OAW) </br> ) </br> ) </br> ) </br> ) </br> ) |

**RULING DENYING MOTION FOR RECONSIDERATION**

**THIS CAUSE** is before the court upon Plaintiff's Motion for Reconsideration and memorandum in support thereof ("Motion"). *See* ECF Nos. 176–77. The court has reviewed the Motion, Defendant's opposition thereto, *see* ECF No. 180, Plaintiff's reply,[1] *see* ECF No. 182, and the record in this matter and is thoroughly advised in the premises. For the following reasons, the Motion is **DENIED**.[2]

This case arises out of Plaintiff's employment with Defendant.[3] He asserts that there were certain promises made to him to induce him to accept employment with Defendant, which promises Defendant failed to honor. Plaintiff filed this lawsuit alleging

---

[1] Plaintiff sought leave to file its reply, which the court grants. ECF No. 181. The court also accepts Defendant's response brief although a response brief was not ordered.

[2] The court finds that the briefs are thorough and complete and that there is no need for oral argument on the Motion. Therefore, the request for oral argument is denied. See D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for oral argument has been made, the Court may, in its discretion, rule on any motion without oral argument.").

[3] The court includes only a brief summary of the factual background here, as a very detailed account appeared in the summary judgment ruling. *See* ECF No. 174 at 2-12.

1

various contract and quasi-contract claims based upon such failures.  He also asserted a claim for wrongful termination.[4]  The parties filed motions for summary judgment, each of which the court granted in part and denied in part.  ECF No. 174.

Plaintiff argues that the court erred in granting summary judgment to Defendant in three respects.  First, the court granted summary judgment on Plaintiff's breach of contract claim insofar as it was predicated upon the failure to pay Plaintiff a bonus in the year 2019, but Plaintiff asserts this conclusion rested upon "misapprehended" facts.  Second, the court granted summary judgment on Plaintiff's wrongful termination claim, but Plaintiff alleges that the court inappropriately weighed the relative credibility of competing evidence in coming to that conclusion.  Finally, the court granted summary judgment on a promissory estoppel claim to the extent it was predicated upon Plaintiff's rejection of another professional opportunity, but here again, Plaintiff argues that the court's conclusion followed from inappropriately rendering conclusions as to disputed facts.  He asks for reconsideration on all points.

"A motion for reconsideration is an extraordinary request that is granted only in rare circumstances . . . ."  *Van Buskirk v. United Grp. of Companies, Inc.*, 935 F.3d 49, 54 (2d Cir. 2019).  "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995) (citation omitted).  Reconsideration is an opportunity for

---

[4] Defendant also asserted several counterclaims, none of which is at issue in the Motion.

the court to correct its own mistakes; it is not a second opportunity for a litigant to argue its position.  *Nat'l Union Fire Ins. Co. of Pittsburg, PA v. Las Vegas Prof'l Football Ltd. P'ship*, 409 F. App'x 401, 403 (2d Cir. 2010).   Accordingly, no new arguments and no new facts may be presented in a motion for reconsideration.  *Id.*

With respect to first argument, the court noted that it was not clear whether Plaintiff had stated a breach of contract claim based upon the withholding of any bonus for the year of 2019, but even if Plaintiff had stated such a claim, he had abandoned it by failing to respond to Defendant's summary judgment argument with respect to it.  Plaintiff alleges that the issue of the 2019 bonus consistently has been litigated throughout this action, and that the court's conclusion was contrary to previous findings.  Plaintiff makes no argument with respect to the issue of abandonment.

In the first instance, Plaintiff's amended complaint (the operative complaint) almost never mentions the 2019 bonus.  His only reference thereto is as follows:

> As a consequence of his abrupt separation, Parimal is left maintaining residences in both Texas and Connecticut, adding to the damages caused by the failure of Manitex to pay his promised compensation, including a bonus payment for the portion of 2019 that he worked at Manitex, and reimbursement for expenses.

ECF No. 23 ¶ 33.  There is *no* other allegation about any representations made by Defendant about the 2019 bonus, nor any other allegation of what that bonus ought to have been or how it ought to have been calculated.  While Plaintiff made specific allegations about representations Defendant allegedly made to him with respect to his *2018* bonus, the complaint is bereft of any similar allegations with respect to the *2019* bonus.  Accordingly, it is not clear what contractual terms Defendant allegedly breached

3

in failing to pay him any bonus in 2019, and consequently, it is not clear that Plaintiff stated a breach of contract claim predicated upon such failure. And contrary to Plaintiff's assertion otherwise, an earlier ruling in this action does not show that the court ever recognized a breach of contract claim based upon the 2019 bonus. Plaintiff cites to the court's disposition of a partial motion to dismiss to support his contention that the 2019 bonus always has been recognized as an independent basis for his breach of contract claim. Specifically, he cites to the following passage:

> As a consequence of his abrupt separation, Parimal is left maintaining residences in both Texas and Connecticut, adding to the damages caused by the failure of Manitex to pay his promised compensation, including a bonus payment for the portion of 2019 that he worked at Manitex, and reimbursement for expenses.

ECF No. 102 at 7 (Hon. Michael P. Shea). However, this exact passage from the amended complaint was incorporated into Judge Shea's ruling[5] on the motion to dismiss, insofar as the court was at such time obligated to accept as true all allegations raised in the complaint. Ergo, Plaintiff essentially is quoting his *own pleading* and attributing that quotation to the court. Judge Shea's ruling contains *no* discussion of a breach of contract claim predicated upon Defendant's failure to pay a bonus in 2019. Nor would one expect to find such a discussion therein, since Defendant never moved to dismiss the breach of contract claim. Thus, it remains unclear whether a claim for a breach of contract based upon Defendant's failure to pay Plaintiff a bonus in 2019 ever was stated.

---

[5] Chief Judge Shea presided over this action until it was transferred to the undersigned.

However, even if there were such a claim active at some point, Plaintiff completely misses the point made in Defendant's reply in support of its motion for summary judgment (the point with which the court agreed in its ruling) that he *failed to counter Defendant's argument and thus abandoned the claim*. Defendant argued that the court should enter judgment summarily with respect to any claim that the failure to pay a bonus in 2019 was a breach of contract. Plaintiff *never* responded to that argument in its response thereto. Accordingly, the court deemed the claim abandoned. Plaintiff apparently continues to miss this point because the Motion still fails either to address the principal argument or to justify the absence of any opposition thereto.

Finally, contrary to Plaintiff's suggestion that the *court* conflated damages with claims, it is *Plaintiff* who has committed this error. Plaintiff argues that the court has committed "manifest injustice in depriving Plaintiff of a *component of damages* simply based on Manitex's whim." ECF No. 177 at 5 (emphasis added). He goes on to assert that the court "treats the 2019 bonus as a separate and distinct claim, rather than as a component of damages within Count One." *Id.* He asserts that his breach of contract claim seeks to recover *all* (emphasis his) damages arising from Defendant's conduct. Indeed, his entire argument seems predicated upon the misapprehension that the court is disallowing a particular kind of damages, but that is not what the court ruled. To the contrary, the court clearly ruled that any *claim* for breach of contract based upon the failure to pay a bonus in 2019 was abandoned (if it ever existed). But the issue of *damages* has not yet been litigated, so whether Plaintiff is entitled to recover some amount in *damages* because he was not paid a bonus in 2019 is an argument he may yet make, and indeed apparently has made in the context of his *damages* analysis.

Accordingly, Plaintiff's first argument fails.

Next, Plaintiff argues that the court inappropriately weighed the credibility of testimony in determining that there was no firm offer from another company (Terex) such that Plaintiff could point to his rejection of the same in satisfying the element of injury for his promissory estoppel claim.  He asserts that the court overlooked a declaration in which he asserts that he had an offer from Terex.  The entire passage he so cites is as follows:

> My conversation with [a Terex executive] on the topic of the Demag sale continued over several weeks. When I told [him] that [a Manitex executive] was putting pressure on me to either accept Manitex's offer of full-time employment or the Terex consultancy, [the Terex executive] said that he would cover me for $10,000 per month until November. Based on my years of working with [him] on transactions, he would not have had such detailed conversations with me about compensation unless he had discussed the idea with other Terex senior officers.

ECF No. 152-1 ¶ 22.  Notably missing from this paragraph, though, is any allegation of an actual offer to hire Plaintiff so that he could facilitate the Demag sale.  The only offer described therein is an offer to pay Plaintiff to refrain from accepting other employment.  That is not an offer of employment.  The court did not weigh the credibility of competing evidence for the simple fact that *there was no competing evidence.*  The Terex executive[6] affied that there was never an offer presented to Plaintiff, and Plaintiff provides no evidence to the contrary.  He presents evidence that he told Terex what his fee requirements would be to facilitate the Demag sale for Terex, and that Terex attempted

---

[6] The court concedes that Plaintiff correctly pointed out that the summary judgment ruling erroneously referred to this executive as the CEO of Terex, but he merely was a senior executive.  The court makes the appropriate correction herein.

6

to induce Plaintiff not to accept another offer, but none of this evidence, alone or together, amounts to a firm offer of employment, even taking Plaintiff's professional experiences into account.  In his statement of facts, Plaintiff even specifies that "*[i]f* Terex's Board decided to move forward with the sale of Demag, the monthly fee arrangement would be continued."  ECF No. 152 ¶ 48 and response (emphasis added).  Thus, it appeared that at the time Plaintiff accepted his offer with Manitex, there was not even a firm *sale* that might require a firm offer to him from Terex.

That there was no such offer seems hardly disputable given that Plaintiff himself gave deposition testimony in which he refers to any position with Terex merely as a "possibility."  ECF No. 138-20 at 40.  He admitted that there was no documentation of this "possibility" at all, much less anything that would indicate a firm offer, such as a consultancy agreement (though his previous employment with Terex had been so memorialized).  *Id.* at 41.  He even testified that the specific terms of any offer weren't finalized.  *Id.* at 41–42.  He states that after some "internal meetings" at Terex (at which it appears he was not present), "it became a very real possibility," and that "it became more serious about actually hiring someone to do that project."  *Id.* at 40.  From this it is clear that there were *negotiations* ongoing between Terex and Plaintiff, and that Terex was contemplating hiring someone to perform the service Plaintiff offered to perform, but there is nothing in the record, even in Plaintiff's own testimony, that shows that there was a firm offer of employment to him.

Accordingly, the court rejects Plaintiff's second argument as well.

Finally, Plaintiff argues that the court improperly inferred facts against Plaintiff's favor in concluding that he had failed to support his wrongful termination claim.  The court

7

determined in its prior ruling that Plaintiff was an at-will employee and as such had only limited protections against termination. Under Connecticut law (which, per Plaintiff, was the applicable law), at-will employees can be terminated for any reason that does not violate public policy. Plaintiff argued that his termination was against public policy because he was "an internal whistleblower who refuse[d] to continue" an illegal practice, and that his termination was retaliation for that refusal. ECF No. 151 at 21.

The relevant facts, as Plaintiff himself laid them out, were that 1) the Italian subsidiary he was assigned to manage used billing practices that he alleges were not compliant with applicable law; 2) when he brought this up to the Chief Financial Officer, she told him to gradually phase out the practice; and 3) he asked the CFO to reduce that to writing, but she declined. ECF No. 152-1 ¶ 35. Thus, the record evidence clearly shows that even assuming that the billing practices at issue are illegal, Plaintiff did not refuse to continue using them. And even if the court were to stretch the reasonable limits of inference and hypothesize that his request for the instruction in writing was some sort of veiled refusal, or was the prelude to a refusal, or was a first step toward making a report to the relevant authorities, his own affidavit states that he would have followed the instructions had he been given them in writing. Accordingly, there is no record evidence, even crediting Plaintiff's version of events, showing he refused to engage in illegal activity.

Plaintiff objects to the court's comment that these facts indicate a desire to avoid liability more than a desire to avoid criminality, asserting that this comment amounts to a credibility assessment of Plaintiff's testimony and speculation as to his state of mind in asking for instructions in writing. But to the contrary, the comment arose in the context of making all reasonable inferences in Plaintiff's favor. The court entertained the possibility

8

that Plaintiff's request might be leading up to a refusal or a report to relevant authorities, but Plaintiff's own testimony foreclosed that possibility. He never stated any plans to bring the practice to the government's attention, but in fact he stated the opposite: that he would have continued the practice, despite believing it to be illegal, if only he had had the CFO's order in writing. Accordingly, the court concluded, based on Plaintiff's proffered evidence, that Plaintiff's request to the CFO was not a refusal, and that it did not indicate that a refusal was forthcoming.

Plaintiff has filed additional deposition testimony, which was not provided to the court when the motions for summary judgment were under review. In doing so, he attempts to slightly revise his previous argument. Now, he appears to assert that he was simply asking if the CFO disagreed with him as to the legality of the billing practices. Setting aside the impropriety of attempting to revise an argument or to rebut a judicial finding by supplying new evidence on a motion for reconsideration, the court still finds this new testimony to be irrelevant, or if it is relevant, that it undercuts Plaintiff's argument. Even if Plaintiff's request for written instructions simply was an invitation for the CFO to disagree with his position, this, again, would not amount to a refusal to continue the subject billing practices. Moreover, Plaintiff's new position shows that the illegality of the practice was debatable, and that Plaintiff's own belief was not one which he held strongly. Thus, it now appears to the court that either (1) Plaintiff did not truly believe that the practice was illegal, and he cannot be a whistleblower absent illegal activity, or (2) Plaintiff did believe that the practice was illegal, and still he cannot be a whistleblower because he did not refuse to continue the practice (and he would have continued to use the practice upon explicit instructions to do so, despite his belief).

Plaintiff's final argument therefore also fails, and with it the entire Motion.

Accordingly, for the reasons stated herein, it hereby is **ORDERED AND ADJUDGED** as follows:

1. The Motion for Reconsideration, ECF No. 176, hereby is **DENIED.**
2. Given this disposition, Plaintiff's request for a status conference, ECF No. 186, also is **DENIED.**
3. Instead, the parties are instructed to kindly file a status report on or before October 10, 2024, indicating (1) whether they are interested in a referral to a United States Magistrate Judge for a settlement conference, and (2) a proposed date to proceed to trial in this matter.

**IT IS SO ORDERED** at Hartford, Connecticut, this 25th day of September, 2024.

                                                                /s/
                                            OMAR A. WILLIAMS
                                            United States District Judge