**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| PARIMAL, )<br>)<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>MANITEX INTERNATIONAL, INC., )<br>)<br>*Defendant*. ) | CASE NO. 19-cv-1910 |

## ORDER DISPOSING OF PRETRIAL MOTIONS

In this employment case, Plaintiff Parimal (a person who goes by that sole name) was a consultant for Defendant corporation Manitex in 2018. That summer, Parimal negotiated his full-time employment there and became an Executive Vice President effective September 1, 2018. He was terminated effective July 31, 2019.

Parimal alleges that Manitex made commitments beyond standard employment, specifically guaranteeing him employment for multiple years, promising specific bonus payments, and agreeing to cover relocation expenses from Connecticut to Texas consistent with the terms of his employment contract. Manitex counters that it did not breach any contract because Parimal's employment was at-will,[1] that Parimal received all the compensation he was owed, and that Parimal in fact owes money to Manitex.

Following cross motions for summary judgment, this court narrowed the parties' dispute to specific parameters of Parimal's alleged contract.[2] ECF No. 174. Parimal subsequently filed a motion for reconsideration, which this court denied. ECF No. 187.

---

[1] As the court later will address, it asked Plaintiff's counsel at the March 12 pretrial conference whether Parimal indeed conceded the "at-will" nature of his employment. Counsel answered in the affirmative.
[2] Plaintiff's claims which survived summary judgment are for: (1) breach of contract ("only to the extent that the claim is [not] based upon the withholding of a bonus in 2019"); (2) promissory estoppel; (3) breach of

1

Subsequently, the parties jointly moved to be referred to a United States Magistrate Judge for settlement discussions. ECF Nos. 191; 192. However, the court underappreciated the parties' different interpretations of this court's rulings, specifically regarding summary judgment and the motion for reconsideration thereof. This stark difference became abundantly clear through the parties' pretrial submissions (ECF Nos. 206; 207; 211) and at the March 12, 2025, pretrial conference.

At the conclusion of the pretrial conference, the court ordered additional briefing on two of the parties' larger disagreements: (1) whether the remaining claims in this case support certain buckets of Plaintiff's alleged damages, and (2) whether Plaintiff's claim for damages related to his 2019 bonus survived summary judgment and the reconsideration thereof. ECF No. 219. The court thanks the parties for timely submission of those briefs.

**Plaintiff's 2019 Bonus**

The court previously ruled that Parimal abandoned his claim for damages tied to a 2019 bonus. ECF No. 174 n. 11 ("Defendant argues in its reply brief that Plaintiff has abandoned his breach of contract claim . . . as to his 2019 bonus . . . . [T]he court agrees that any breach of contract claim was abandoned insofar as it *relates* to a 2019 bonus, though it is not clear that Plaintiff ever claimed any entitlement to a bonus for 2019. Whether abandoned or never raised, the court finds that there is no claim for a 2019 bonus.") (emphasis added).

A claim is properly deemed "abandoned" when a party fails to provide any response to an argument, or to address a claim in any manner. *Coger v. Connecticut*,

---

the implied covenant of good faith and fair dealing; (4) fraudulent misrepresentation; and (5) negligent misrepresentation. Manitex maintains its claim under the Texas Theft Liability Act. ECF No. 174, pg. 44.

2

309 F. Supp. 2d 274, 280 (D. Conn. 2004) (holding that a claim may be deemed abandoned when the plaintiff failed to respond to the defendant's argument, and that summary judgment should be granted in the defendant's favor); *see Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (upholding inference of abandonment when party moved for summary judgment on all claims and non-moving party opposed motion with respect to only one claim). Plaintiff did not raise any substantive evidence in response to Defendant's summary judgment motion as to his 2019 bonus. Indeed, Plaintiff's briefing discusses a "bonus" in the singular form, often referring to "*the* bonus" or "*a* guaranteed bonus." *See, e.g.,* ECF No. 151, pgs. 7 (". . .it is clear that Langevin and Parimal discussed that Parimal's bonus would be guaranteed and that he would receive 100% of the bonus plan for 2018"), 23 (". . .the promised bonus."); *see also id.* pgs. 10-11, 13. In context, those references suggest Plaintiff contemplated only claiming a bonus for his 2018 work. *See id.*, pg. 14 ("Second, it is clear that Manitex acted in bad faith to reduce Parimal's bonus by claiming *months after Parimal joined Manitex* that it was subject to the performance of the PM Group, which failed to meet its performance targets.") (emphasis added).

Even given an opportunity to articulate his claim, Plaintiff declined. Defendant's Statement of Material Facts claimed "Parimal was not eligible to participate in Manitex's bonus plan for the period ending December 31, 2019, because Manitex terminated him effective July 31, 2019." ECF No. 152, ¶ 41. In his counterstatement, Plaintiff stated that he disputed the statement without offering citation to the record. *Id.* Local Rule 56(a)(3) provides that "each denial in an opponent's Local Rule 56(a)2 Statement, must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the

facts at trial, or (2) other evidence that would be admissible at trial." Failure to do so allows the court to consider the proffered statement as fact. *Id.* Here, Plaintiff did not comply with the local rules and the court was within its power, independent of deeming the claim abandoned, to grant Defendant's motion for summary judgment as to any claim for damages with respect to Plaintiff's 2019 bonus.

Plaintiff moved for reconsideration of summary judgment. He argued, *inter alia*, that the court "should reconsider its determination that the breach of contract claim was abandoned." ECF No. 177, pg. 4. He latched onto a portion of the court's ruling, arguing that it entitles him to pursue (via the jury) damages stemming from Defendant's failure to pay him a bonus for his 2019 work. At summary judgment, the court dismissed any *breach of contract claim* insofar as it **relates** to a 2019 bonus. *See* ECF No. 174 n. 11. The court's reconsideration order must be read in that context. That is, the court determined that, by abandoning the 2019 bonus portion of his breach of contract claim, the plaintiff simply could not present facts that relate *exclusively* to the dismissed 2019 bonus claim and request damages for the same. That is because the court invalidated that claim as to liability *and damages*. Therefore, while the court's language regarding "damages not yet being litigated" technically was accurate at that juncture, it cannot be interpreted to resurrect a claim that has been legally extinguished, especially given that reconsideration was denied.

Still, the court admittedly could have been clearer in denying reconsideration and, in full fairness to Plaintiff, it will take a third look at the factual evidence Plaintiff hopes to present to the jury. Parimal offered three exhibits, including his deposition testimony

(ECF No. 222-1), Manitex Trial Exhibit 514 (ECF No. 222-2), and Parimal Trial Exhibit 9 (ECF No. 222-3).[3]

Plaintiff's deposition testimony does not include any assertion that he was promised any bonus whatsoever.  Instead, his claim for a 2019 bonus is predicated on his beliefs that a bonus is a "very significant component of [his] compensation" and that "if you work for seven months, you deserve a bonus for your work. . . .[o]therwise, you know, companies can fire people on the 29th of December instead of giving them a bonus." ECF No. 222-1, Parimal Dep. Tr. Vol. I 186:2-13.  Parimal complains that nobody told him a prerequisite to earning a bonus as to any given year first required employment into the following year; still, he argues that anyone working for a significant amount of time during any given year "deserve[s] a bonus" for that year, regardless of their failure to complete that year of employment.  *Id.*, Parimal Dep. Tr. Vol. I 187:17-188:6.  Nothing in those statements indicates he was promised a 2019 bonus; instead, it seems that Parimal's claim for damages is predicated upon ***his own*** beliefs of how companies ***should*** operate.

Plaintiff also submitted Manitex International, Inc.'s Schedule 14A statement. Plainly, that statement does not support that the defendant promised him a 2019 bonus in any shape or form.

As for his email from April 5, 2019, it does mention the 2019 bonus, but only in a manner devoid of any context which might support its claimed significance.  That email, sent at 3:23 AM attempted to "recap" a thread of messages which entirely predated his full-time employment at Manitex, which had begun some seven months earlier.

---

[3] Plaintiff did not submit any of these exhibits in opposition to Defendant's motion for summary judgment. The court reasonably could end its review here, because while Defendant referenced select pages in its statement of facts, the cited portions did not address the 2019 bonus issue.

5

That email concedes that during his pre-employment negotiation, Manitex "chipped away at the most significant points of [Parimal's] proposal," which included hopes of a "guaranteed bonus." Parimal claims that these elements were "not rejected outright," though he further concedes that a "separate cover letter . . . does not promise" them. Indeed, he closes that email by suggesting that Manitex "should also think about the 2019 bonus, because under the current budget . . . no one will get any bonuses," in which case Parimal would "not have any offer letter terms to protect [him]."

The 3:23 AM email from Parimal further conceded that during negotiations, Manitex "took out the guaranteed bonus." It went on include a thread of emails which may have been cut and pasted (if not also provided via excerpt) in that certain messages do not have a time and date stamp, nor do they include the sender's or recipient's name. Even then, no email is provided from *after* the one *from* Parimal on April 5, 2019. There is no indication whether Manitex indeed did "think about the 2019 bonus," or whether it disputed what was negotiated, discussed, or promised prior to Parimal's employment.

While this might appear to be a hollow stretch of an argument exposing Plaintiff to rigorous cross-examination, the court is careful not to usurp the province of the jury. Therefore, weak as the argument might seem (and as wasteful of the limited time available to present evidence before the jury), Plaintiff will be permitted to argue that he ought to receive damages tied to his 2019 bonus.

**Plaintiff's Home Related Costs**

"The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." *West Haven Sound Dev.*

6

*Corp. v. West Haven*, 201 Conn. 305, 319 (1986).  "It has traditionally been held that a party may recover general contract damages for any loss that may fairly and reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself." (Internal quotation marks and citation omitted). *Meribear Prods., Inc. v. Frank*, 340 Conn. 711, 754 (2021). Damages are limited to those that "the defendant had reason to foresee as the probable result of the breach at the time when the contract was made." *Neiditz* v. *Morton S. Fine & Associates, Inc.*, 199 Conn. 683, 689 n. 3 (1986); *see also* Restatement (Second), Contracts § 351 (1) and (2), p. 135 (1981) ("Damages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made . . . . [l]oss may be foreseeable as a probable result of a breach because it follows from the breach . . . in the ordinary course of events. . . ."); 24 Samuel Williston & Richard A. Lord, Williston on Contracts § 64:4 (4th ed. 2023) (Reliance damages are designed to compensate the plaintiff for any reasonably foreseeable costs incurred or expenditures made in reliance on the promise that has now been broken).

Here, the plaintiff claims Manitex offered him employment for an uncertain term of years.[4]  As the court understands his claims, Plaintiff says Manitex induced him to move to Texas with a promise of employment for a term of years and he now claims the cost of

---

[4] "As a general rule, contracts of permanent employment, or for an indefinite term, are terminable at will." *D'Ulisse-Cupo v. Bd. of Dirs. of Notre Dame High Sch.*, 202 Conn. 206, 211 n.1 (1987) (citing *Somers* v. *Cooley Chevrolet Co.*, 146 Conn. 627, 629, 153 A.2d 426 (1959); *Fisher* v. *Jackson*, 142 Conn. 734, 736, 118 A.2d 316 (1955)).  Further, at the pretrial conference, in response to a direct question from the court, Attorney Rich averred that Plaintiff was an "at-will" employee.  Certainly, if that were true, that fact would invalidate certain claims in this case, but the defendant did not raise it in its briefing, thus the court will presume that the defendant interpreted Attorney Rich's answer as a misstatement in light of the record in this case where Plaintiff has argued he was not an at-will employee.

7

maintaining two homes.[5]  Based on the record before the court, the plaintiff may argue to the jury the cost of maintaining two homes.

Plaintiff also claims to be eligible for punitive damages for his breach of contract claim.  While such damages are not normally available for a breach of contract, Connecticut courts allow them where a plaintiff successfully shows an element of a tort such as wanton or malicious injury or reckless indifference to the interests of others.  *Triangle Sheet Metal Works, Inc. v. Silver*, 154 Conn. 116, 127-28 (1966).  If "punitive" damages are allowed, however, they are "limited to an amount which will serve to compensate the plaintiff to the extent of [her] expenses of litigation less taxable costs." *Id.* at 127.

Plaintiff maintains claims sounding in tort; therefore, he is permitted to argue punitive damages to the jury.  *Kramer v. Petisi*, 285 Conn. 674, 684, 940 A.2d 800 (2008); *see McCarter & Eng., LLP v. Jarrow Formulas, Inc.*, 351 Conn. 186 (2025) (holding a party in a breach of contract action must allege and prove an independent tort before punitive damages become available).  However, the defendant may move at the close of evidence to preclude that instruction should the plaintiff fail to satisfy his burden.  *Champagne v. Raybestos-Manhattan, Inc.*, 212 Conn. 509, 532-33 (1989).

**Motions in Limine**

Defendant moved in limine to exclude approximately 60 exhibits.  The court grants the motion in part and denies it in part.

---

[5] The court notes that the statute of frauds likely prohibits Plaintiff from tethering certain categories of his purported damages to his breach of contract claim.  *See* Conn. Gen. Stat. Ann. § 52-550; *Redgate v. Fairfield University*, 862 F. Supp. 724 (D. Conn. 1994) (statute of frauds precluded civil action by private high school teacher for alleged breach of a contract that he could work for the school as long as he wanted).  But that issue is not before this court and may be irrelevant considering Plaintiff's promissory estoppel claim.  *See Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475 (1980).

8

The court grants Defendant's motion to the extent Plaintiff seeks to introduce his own statements absent a hearsay exclusion or exception. Several exhibits are email threads, and Plaintiff is precluded from introducing his own statements by email.[6] In fact, some emails *only* contain the plaintiff's own statements. Therefore, those emails are excluded altogether as inadmissible hearsay.[7]

The court also reserves judgment as to several of Plaintiff's exhibits purportedly demonstrating home expenses.[8] Those documents are hearsay unless Parimal successfully argues a hearsay exception, such as the business record exception, applies.[9] *See Bryndle v. Blvd. Towers, II, LLC*, 132 F. Supp. 3d 486, 496 (W.D.N.Y. 2015); *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 572-74 (S.D.N.Y. 2013); *Gucci Am., Inc. v. Rebecca Gold Enterprises, Inc.*, 798 F. Supp. 177, 180 (S.D.N.Y. 1992).

As to Defendant's motion to exclude exhibits that are based on resolved claims, that motion is granted in part and denied in part. The court finds that Exhibit 17 is irrelevant to Plaintiff's remaining claims and will be excluded. The court also excluded Exhibit 22 following argument at the pretrial conference. The remainder of Defendant's objections are overruled, but may be renewed at trial if Plaintiff's questioning veers toward claims summarily dismissed in this case.

Consistent with the court's ruling above, Defendant's objection to evidence of home related costs is overruled but subject to renewal at trial. Exhibit 23 is an exception to that

---

[6] Exhibit Nos. 2, 4, 5, 6, 7, 9, 10, 11, 12, 16, 61, and 62.
[7] Exhibit Nos. 13, 14, 15, 60, 63, and 64.
[8] Exhibits 40, 41, 42, 44, 45, 47, 48, and 50.
[9] Alternatively, the plaintiff may argue certain information is not being offered for the truth of the matter contained therein.

ruling. While the defendant objected to that document on different grounds, it is inadmissible hearsay. *See Scotto v. Brady*, 410 Fed. Appx. 355, 361 (2d Cir. 2010). Therefore, Exhibit 23 will be excluded from evidence.

The court also hereby excludes Exhibits 49 and 51 as hearsay unless Plaintiff can demonstrate that they ought to be admitted.

Any other objection not disposed of at the pretrial conference or otherwise addressed by this ruling is denied but subject to renewal at trial.

## **CONCLUSION**

Accordingly, it is thereupon **ORDERED AND ADJUDGED** as follows:

1. Plaintiff will be permitted to present evidence of damages related to his 2019 bonus and home improvement costs;
2. Defendant's motion in limine is granted in part and denied in part consistent with the court's ruling.

**IT IS SO ORDERED** in Hartford, Connecticut, this 20th day of March, 2025.

                                              /s/
                                 OMAR A. WILLIAMS
                                 UNITED STATES DISTRICT JUDGE